## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually;  ATLANTIC BUILDING SYSTEMS, LLC, a
Delaware corporation, doing business as ARMSTRONG STEEL CORPORATION; PRQ
INTERNET KOMMANDITBOLAG (LIMITED PARTNERSHIP) doing business as PRQ INET
KB; and GOTTFRID SWARTHOLM, individually.

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff General Steel Domestic Sales, LLC, d/b/a General Steel Corporation, a Colorado

limited liability company ("General Steel"), by and through its undersigned counsel, for its

Complaint and Jury Demand against the above-named Defendants, states and alleges as follows:

### I. JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this civil action pursuant to the

provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a) and (b), and 28

U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws

of the State of Colorado pursuant to 28 U.S.C. § 1367(a), because the state law claims are so

related to the federal claims that they form part of the same case or controversy and derive from

a common nucleus of operative facts.  This Court may properly exercise personal jurisdiction

over Defendants since each of the Defendants directly targets business activities toward

consumers in Colorado and causes harm to General Steel's business within this Judicial District. Further, Defendants PRQ Internet Kommanditbolag (Limited Partnership), d/b/a PRQ Inet KB, and Swartholm have acted as the agents for, in concert with, and pursuant to an unlawful agreement with Defendants Ethan Chumley ("Chumley") and Armstrong Steel Corporation ("Armstrong") to host the websites that are the subject of this action.  Defendants created the websites and false articles that are the subject of this action for the purpose of attacking Plaintiff's business.  The website www.generalsteelscam.com specifically incorporated General Steel's name in the domain name in an effort to deliberately exploit search engine technology to funnel searches regarding the Plaintiff to www.generalsteescam.com.  The websites www.generalsteelscam.com and www.steelbuildingcomplaints.com and the articles and blogs uniquely target General Steel in the State of Colorado and also target having consumers contact Colorado law enforcement and a Colorado attorney in their false websites, in order to disrupt and harm Plaintiff's business.  Moroever, Defendants Chumley and Armstrong do business and reside in the State of Colorado.  Each of the Defendants is committing tortious acts in Colorado, is engaging in interstate commerce, and has wrongfully caused General Steel substantial injury in the State of Colorado. Further, in a prior World Intellectual Property Organization action (described below), PRQ wrote that the dispute over website ownership and control "belong[e]d" "in a U.S. Court."

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the Defendants transact business reside or may be found in this judicial district. In addition, certain of the acts of infringement, tortious conduct, and other statutory violations

claimed herein, which constitute a substantial part of the events giving rise to Plaintiff's claims, occurred in this judicial district and were targeted at General Steel in this judicial district.

## II. PARTIES

3.      Plaintiff General Steel is a Colorado limited liability company having its principal place of business located at 10639 Bradford Road, Littleton, Colorado 80127.  General Steel is one of the nation's leading distributors of pre-fabricated steel buildings.

4.      Defendant Ethan Daniel Chumley is the sole owner of Atlantic Building Systems, LLC d/b/a Armstrong Steel Corporation.  Chumley resides at 6533 Lost Canyon Ranch Road, Castle Rock, Colorado 80104.

5.      Defendant Atlantic Building Systems d/b/a Armstrong Steel Corporation is a Delaware corporation whose principal place of business is 5889 Greenwood Plaza Boulevard, Greenwood Village, Colorado 80111.  Armstrong is a distributor of pre-fabricated steel buildings and a competitor of General Steel.

6.      Defendant PRQ Internet Kommanditbolag (Limited Partnership), d/b/a PRQ Inet KB, (hereafter "PRQ") is a Swedish limited partnership located in Stockholm, Sweden, and is identified by WHOIS as the Registrant (Owner) of the domain name and website for www.steelbuildingcomplaints.com (and previously www.generalsteelscam.com).  Gottfrid Swartholm is the general partner of PRQ.  According to Wikipedia:

> Part of PRQ's business model is to host any customers regardless of how odd or controversial they may be. According to *The New York Times*, "The Pirate Bay guys have made a sport out of taunting all forms of authority, including the Swedish police, and PRQ has gone out of its way to be a host to sites that other companies would not touch." The PRQ service has been described as "highly secure, no-questions-asked hosting services". The company is reported to hold almost no information about its clientele and is maintaining few if any of its own logs. Fredrik Neij and Gottfrid Svartholm are said to have amassed "considerable

expertise in withstanding legal attacks". Svartholm is quoted to have said "We do employ our own legal staff. We are used to this sort of situation" in a telephone interview. Due to hosting The Pirate Bay, PRQ was target of a police raid.

The co-founders have been criticized for hosting controversial websites, including web pages that promote paedophilia, such as the North American Man/Boy Love Association (NAMBLA), a paedophile and pederasty advocacy organization. Local authorities and anti-paedophilia activists in Sweden have failed to persuade PRQ to close the sites. The pair defended their decision, citing freedom of speech.

Other criticism originates from PRQ's hosting of the BitTorrent website The Pirate Bay, WikiLeaks, and the French far-right blog Fdesouche.

On 1 October 2012, PRQ was raided and a number of sites which they provided hosting for were taken offline for alleged copyright infringement.

7.      Gottfrid Svartholm, a/k/a, Gotttfrid Svartholm, a/k/a Gottfrid Svartholm Warg (hereafter "Svartholm"), is a resident of Sweden who is currently incarcerated in a Swedish prison for various criminal convictions related to his use of the internet.  Svartholm is identified by WHOIS as the Registrant (along with PRQ) for www.steelbuildingcomplaints.com and previously for www.generalsteelscam.com.  Svartholm is the managing partner for PRQ. Svartholm owns, manages, and controls the operations of PRQ and is personally liable for the claims asserted herein.

### III. GENERAL ALLEGATIONS

**Background**

8.      Chumley worked in sales for General Steel from October 19, 2004 until he was fired on July 29, 2005.

9.      After Chumley's firing from General Steel, during 2006, he sent obscene spoof emails to General Steel managers and employees.  Chumley manipulated the email systems so

that the email falsely reflected that its sender's identity was General Steel's owner, Jeffrey

Knight, as well as other General Steel employees.

10.     In 2009, Chumley's new company, Armstrong Steel, began selling pre-

engineered steel buildings though its internet website.

11.     In early 2010, General Steel notified Chumley and Armstrong that they were

illegally using General Steel's trademarked name in their Google Sponsored Ad text and that

they were engaging in false advertising relating primarily to statements made to the public on

their website.   Chumley and Armstrong Steel, however, refused to comply with General Steel's

demand to cease and desist from their trademark infringement and false advertising.

12.     In June 2010, General Steel sued Chumley and Armstrong Steel in the United

States District Court for the District of Colorado, Civil Action No. 10-cv-001398 – PLB-KLM

(hereafter "Federal Case 1"), for *inter alia*, violations of the Lanham Act for trademark

infringement and false advertising.   A three day bench trial was held on July 9-11, 2012.   No

decision has yet been issued by the Federal Court.

13.     In or about May 2011, the Colorado Attorney General's Office commenced an

investigation of Chumley and Armstrong Steel into their sales practices and advertising.

**Chumley's False Advertising Through Use of Fake Consumer Watchdog Websites**

14.     In or about June 2011, a website appeared on the internet called

www.generalsteelscam.com containing false and defamatory content about General Steel and its

past and present employees.   The website Registrant for www.generalsteelscam.com was

identified as PRQ.eNom, Inc., was the Domain Registrar.   PRQ is notorious for hosting

scandalous and illegal websites, and claiming that anything, no matter how repulsive, illegal,

immoral, or outrageous, is "free speech" and they tout their ability to hide the identity of the true

owners of such websites.  (PRQ hosts or has hosted child pedophilia websites, the Wikileaks

website, and many others.)  PRQ's principals are currently reported to be in Swedish prison.

15.    The website www.generalsteelscam.com purported to be a site "by consumers, for

consumers."  However, Chumley admitted to his internet marketing agent that he "had"

www.generalsteelscam.com, and sought to market it.  Chumley also admitted ownership and/or

control of www.generalsteelscam.com to one or more Armstrong employees.

16.    In November 2011, General Steel filed a World Intellectual Property Organization

("WIPO") Complaint against PRQ, for its bad faith registration of the domain name

www.generalsteelscam.com (the "WIPO Action").  PRQ responded *pro se*.

17.    In January 2012, WIPO made Ethan Chumley a party respondent to the WIPO

Action.  Chumley responded to the WIPO Action through his attorneys.

18.    On March 20, 2012, WIPO issued its Case Decision in the WIPO Action holding

in part as follows:

> *The Panel has found that Chumley caused the disputed domain name to be registered in full knowledge of the Complainant's rights and has used it primarily for the purpose of disrupting the business of the Complainant who is a competitor.*

The WIPO Case Decision further reflects that "*It is not credible that Chumley is doing*

*this only for the purpose of providing a public platform for criticism of [General Steel].  Rather,*

*he appears to be using it as a vehicle for his own commercial advantage.*"  Still further, the

WIPO Case Decision reflects that Mr. Chumley used the website "*in bad faith.*"

19.    On or about April 2, 2012, after the WIPO Case Decision but prior to the domain

name www.generalsteelscam.com being transferred to General Steel, Chumley posted on

www.generalsteelscam.com that the transfer would not deter him, but the site would continue to exist under a new name.

20.     Elsewhere, in Federal Case 1, Chumley testified that he would "not give up" when it came to going after General Steel.

21.     Subsequently, as of June 2012, Chumley did not give up attacking General Steel with false websites and false advertising:   he and Defendants began to operate a new website using identical content and formatting from www.generalsteelscam.com.  The new website, www.steelbuildingcomplaints.com, contains significantly false, misleading, and defamatory content about General Steel and its employees, and is greatly damaging to General Steel.

22.     The new website, www.steelbuildingcomplaints.com, uses the trademarked name of General Steel in its source code and metatags.

23.     The new website, www.steelbuildingcomplaints.com, is registered on the internet to PRQ Inet KB – Gottfrid Swartholm, Registrant, and eNom, Domain Registrar, as was www.generalsteelscam.com.

24.     The registration, establishment and maintenance of these websites were acts taken as a direct result of one or more agreement(s) among all Defendants to undertake false advertising against General Steel.

**Marketing of steelbuildingcomplaints.com**

25.     In order to promote and market www.steelbuildingcomplaints.com (and previously www.generalsteelscam.com) Chumley and Armstrong Steel have created an extensive network of websites containing "back-links" to the www.steelbuildingcomplaints.com website. These websites contain approximately one thousand or more backlinks whose title tags contain

the trademarked name of General Steel.  However, the back-links do not take the searcher to any website associated with or authorized by General Steel.  Rather, clicking on "General Steel" or "General Steel Buildings" redirects the searcher to the false www.steelbuildingcomplaints.com Website (and previously to the www.generalsteelscam.com website).  Elsewhere, clicking on "General Steel" or "General Steel Buildings" in portions of the blog sites redirects the searcher to Armstrong Steel's own website or to Armstrong Steel press releases.

26.     This extensive network of back-links constitutes a "link farm" which is used by Defendants to promote www.steelbuildingcomplaints.com and make it achieve "first page" ranking so that any time a consumer searches the internet for "General Steel" or General Steel Buildings," Defendants' false purported "consumer" website appears prominently on the first page of major search engine results.

27.     The ownership of these back-linked websites is hidden by Chumley and Armstrong Steel through their private registrations on Go Daddy and/or Domains by Proxy. However, investigation, including historical Whois records, has revealed that Chumley and Armstrong Steel own and control these back-linked websites.  The back-links to www.steelbuildingcomplaints.com increase the positioning of www.steelbuildingcomplaints.com on internet search results and rankings when consumers are searching for General Steel or General Steel Buildings.

28.     There is also extensive back-linking from the link farm to Armstrong Steel's website. Chumley has created this extensive back-linking in order to gain first page ranking for internet searches for General Steel and General Steel Buildings, and to direct General Steel customers to Armstrong Steel's website.

29.     When consumers search the internet for General Steel or General Steel Buildings they will see the www.steelbuildingcomplaints.com search result and link on the top of the first page.

30.     Chumley has created his network of websites and/or internet blogs using steel/metal building terminology to falsely identify the sites as reliable objective consumer information for steel/metal building purchases.

31.     Defendants' website www.steelbuildingcomplaints.com (and previously www.generalsteelscam.com) and their extensive marketing of these websites and use of their bogus blog network back-linking to www.steelbuildingcomplaints.com has caused and is causing great damage to General Steel and irreparable harm, because untold numbers of consumers and potential customers and contracting parties of General Steel will see these false websites and never contact General Steel and/or will not do business with General Steel because they will read and believe the grossly false information with which Defendants are polluting the internet.

**General Steel's history and impact of steelbuildingcomplaints.com**

32.     Since its inception in 1995, General Steel has spent approximately $60 million ($60,000,000) for advertising and marketing.  General Steel is the most searched brand name in the steel building industry.  Google currently reports in its 2004 to present trends reporting that searches for the term "steel buildings" (the most commonly searched industry term) identifies General Steel Buildings and General Steel in the top 8 ranked searches for search terms closely related to steel buildings during this time frame.  No other steel building company or brand name appears in Google's top ten ranked searches related to steel buildings.

33.     General Steel has advertised for many years on national radio and television shows.  General Steel advertises on national radio shows such as <u>The Rush Limbaugh Show</u>, <u>The Sean Hannity Show</u>, <u>Glen Beck Show</u>, <u>Mike Gallagher Show</u>, <u>Mike Savage Show</u>, <u>Mark Levine Show</u>, <u>Fox News Radio</u>, and others.  This advertising has reached millions of people on a weekly basis for many years.  General Steel's name has become widely known throughout the United States due in significant part to the extensive brand investment, designed to drive consumers in the market to build to General Steel's website and to contact the company.

34.     General Steel has acquired common-law trademark rights in its name.

35.     General Steel owns federal trademark Registration No. 2668226 for "GENERAL STEEL CORPORATION and Design".  This registration was filed on May 18, 2001 and issued on December 31, 2002.

36.     General Steel's registered logo contains the trade name "General Steel Corporation" and General Steel's trademark registration separately identifies the words "General Steel Corporation" in all capital letters as a "word mark."  General Steel's registered mark states that "[N]o claim is made to the exclusive right to use 'Steel Corporation' apart from the mark as shown."

37.     Pursuant to 15 U.S.C. § 1057(b), "A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate."

38.     Plaintiff General Steel's federal trademark registration is incontestable.  An incontestable registration is conclusive evidence of the validity of the mark, its registration, the registrant's ownership of the mark and the registrant's exclusive right to use the mark in regard to the goods specified in the registration.  Plaintiff has incontestable trademark rights in the words "General Steel" and "General Steel Corporation" because these words are a salient part of the registered mark.

39.     The extensive and pervasive uses by Defendants of the terms "General Steel," "general steel," "General Steel Buildings," and "general steel buildings" in their Internet advertising, articles, websites, blogs, and metatags, impermissibly trades upon the goodwill that General Steel has created in its mark. Defendants have generated initial interest confusion among customers and had caused likelihood of confusion and actual confusion.

40.     By using General Steel's mark in his blogs and websites and link farm, Chumley redirects consumers looking for General Steel to www.steelbuildingcomplaints.com, rather than General Steel's websites or a legitimate and truthful website or blog.

41.     Use of "back-links" on the internet are designed to take searchers to another website or blog authorized by or belonging to the searched business, not to a false site created by a competitor.  Chumley's use of General Steel's mark to redirect consumers searching for General Steel is falsely and negatively impacting the General Steel name and brand equity.

42.     Chumley and Armstrong Steel have regularly informed the public about www.generalsteelscam.com and its successor website www.steelbuildingcomplaints.com and have provided the public with links to these websites.  Chumley and Armstrong Steel regularly inform consumers that www.steelbuildingcomplaints.com (and previously

www.generalsteelscam.com) is a consumer watchdog website containing truthful information about General Steel.  Chumley and Armstrong Steel have not informed consumers that these websites were created by Chumley and are and/or were controlled by Chumley, and that these websites are substantially false and misleading, containing false and outrageous content provided by Chumley in order to harm General Steel.

43.     Chumley and Armstrong Steel have been very successful financially as a result of their false advertising and attacks on General Steel.  At the July 2012 trial, Chumley testified that over its first three years in business, Armstrong Steel had the following revenues: 2009 – approximately $600,000; 2010 – approximately $3.4 million; 2011 – approximately $8 million; 2012 – approximately $10 million (per Chumley's testimony at the July 2012 trial).

44.     General Steel has lost substantial business as a result of the false websites www.generalsteelscam.com and www.steelbuildingcomplaints.com, including but not limited to lost contracts and lost prospective business advantages.

**The Fake Websites, Articles and Blogs Purporting to Be Written by General Steel and its Management**

45.     As part of their malicious campaign of false advertising directed at harming General Steel, Chumley and Armstrong Steel created and published numerous false articles and blogs on multiple websites.  These fake articles and blogs purported to be authored by General Steel, Jeff Knight (General Steel's President) and Nathan Wright (General Steel's former Vice-President).  The articles contain extensive false information about General Steel, including many which falsely attribute fraud and scams to General Steel and its management.

**Chumley's Fraudulent Telephone and Mail Attack**

46.     In December 2012, Chumley commenced another attack on General Steel.  This time, General Steel's customers began receiving phone calls from a man or men falsely claiming to be an investigator with the Colorado Attorney General's Office.  This fake investigator questioned General Steel customers about their transactions and sought to get them to bring claims and/or complaints against General Steel.

47.     As part of this fraudulent scheme, Chumley began sending General Steel customers a letter dated December 19, 2012, from the "Consumer Advocacy Alliance – General Steel Investigation Unit."   The letter purported to inform General Steel customers of an allegedly current Colorado Attorney General action against General Steel pursuant to which they may be entitled to recover money.

48.     The letters were mailed to hundreds of General Steel customers.

49.     The "Consumer Advocacy Alliance" does not exist.  No organizational contact information for it appears for it in the letters.  The letters identify no "Alliance" personnel by name or contact information.  The letters offer no way for its recipients to contact the "Alliance" at all.

50.     The letters were mailed in Priority Mail envelopes containing a return address of 8100 East Maplewood Avenue #200, Greenwood Village, Colorado 80111.  The company located at that address does not house or operate the "Consumer Advocacy Alliance" or any other consumer organization, and is not in the steel building or construction business.  Neither it nor its personnel has anything to do with the fake letters and mass mailings.

51.     The letters encourage General Steel's customers to complain about General Steel to the Colorado Attorney General, the Denver/Boulder Better Business Bureau, and the Federal

Trade Commission.  In order to induce the recipients to lodge such complaints, the letters falsely inform the customers that there is a fund set up for payments to them.

52.     In February 2013, Defendants Chumley and Armstrong began sending a further follow-up "Consumer Advocacy Alliance" letter to General Steel's customers.  This letter is grossly false and misleading and also seeks to encourage General Steel customers to cancel their contracts, seek refunds, and make complaints with the Better Business Bureau and state attorney generals.

53.     In order to obtain the mailing addresses for the letters, it is believed that Chumley obtained the General Steel customer information from illegally accessing computers belonging to General Steel's supplier.

**Injury**

54.     As a direct and proximate result of the wrongful conduct described herein, General Steel has incurred significant damage, including but not limited to lost sales, lost profits, lost customers, lost prospective business advantage, customers who have made complaints that would not have been made but for the false attorney general calls and/or letters, and damage to reputation and goodwill.

**FIRST CLAIM FOR RELIEF**
**(False Advertising - Lanham Act – 15 USC § 1125(a)(1)(B) – All Defendants)**

55.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 54 above.

56.     Defendants have made false or misleading descriptions of fact or false or representations of fact in their commercial advertising, including the Websites, articles and blogs, metatags, telephone calls, and letters, which misrepresent the quality of General Steel's

products and services.  Defendants Chumley and Armstrong are in competition with General

Steel and their advertising and promotion constitutes commercial speech.  Defendants PRQ and

Swartholm are acting as agents of Chumley and Armstrong Steel, and in concert with Chumley

and Armstrong Steel. The false or misleading commercial advertising and commercial speech by

Defendants includes the following:

A.    The website www.steelbuildingcomplaints.com (and previously www.generalsteelscam.com) (the "Website") purports to be a consumer watchdog site by consumers for consumers, when in truth, it is a false website created by Chumley;

B.    The Website is outrageous and contains materially false information about General Steel and its past and present employees;

C.    The website states falsely that the Colorado Attorney General reopened a 2004 case it had brought against General Steel;

D.    The Website also attempts to falsely show that the Colorado Attorney General is involved with the Website;

E.    The Website uses 5-10 year old complaints found in the past on the internet and posts them as recent complaints portraying the complaints as within the past year;

F.    The Website states that the most frequent complaint received is that General Steel "stole the customer's deposit";

G.    The Website falsely portrays old, closed, and resolved disputes as legitimate and current complaints;

H.    The Colorado Attorney General's office has no connection with the Website;

I.    The Better Business Bureau has no connection with the Website;

J.    The Website falsely identifies General Steel employees and former employees as "Culprits";

K.    Below are excerpts from the Website highlighting some of the falsehoods:

# WHO ARE WE?

WWW.STEELBUILDINGCOMPLAINTS.COM **is a blog by consumers, for consumers that have been ripped off by Jeffrey Knight & his corporate web of deceit. [ALL FALSE] All of these company names are run by the same crook. [CROOK IS FALSE]**

- General Steel

- Anthem Steel

- Discount Steel

- Capital Steel Industries

- GenStone

- Building Services Group

- and we want justice! **The Colorado Attorney General & Judge Jackson imposed sanctions that have been COMPLETELY DISREGARDED by these crooks and Judge Jackson has done NOTHING to right the wrongs this organization continues to engage in. [ALL FALSE] They continue to blatantly defy his orders *without* consequence. [ALL FALSE]**

If the Attorney General's Office is incapable of delivering justice while this man spends our hard earned money on luxurious vacations, fancy cars, and multi-million dollar real estate acquisitions, then maybe the internet can, through freedom of speech and our pending class action suit. [ALL FALSE]

# WHAT WILL THIS SITE DO FOR YOU?

This site exists as a hub for all General Steel customers who have been deceived. [FALSE]

## SCANDAL ALERT – Judicial Arbiter Group & General Steel Join Forces [FALSE]

Dec 22

adminAnthem Steel Buildings, General Steel, General Steel Building, General Steel Buildings, General Steel Complaints, Jeff Knight, Jeffrey Knight – News About The Jeffrey KnightNo Comments

Recently, another General Steel employee came forward with information she overheard at work. Specifically, conversations between General Steel's attorneys. She detailed multiple conversations she overheard between

General Steel's attorneys and paralegals where they were BRAGGING OF HAVING JUDICIAL ARBITER GROUP "UNDER CONTROL" AND "IN THE BAG". [FALSE] This information is serious cause for concern and makes us think both Judicial Arbiter Group & General Steel Corporation need to be looked into further to determine whether an inappropriate business relationship between JAG [Judicial Arbiter Group of Denver] & General Steel exists…especially considering the number of seemingly lopsided judgements in General Steel's favor in the past – despite customers having been misled, outright lied to, building prices being increased on customers after a contract had been signed, etc.  [ALL FALSE]

Judicial Arbiter Group of Denver Colorado, www.jaginc.com , has been working in concert with General Steel Corporation with respect to ALL of General Steel Corporation's arbitration proceedings with dissatisfied customers.  [ALL FALSE]

Here's the background: In General Steel's contract terms and conditions there is a specific arbitration provision prohibiting any general steel building purchaser who has been scammed from bringing the issue to a public court so that it can be a matter of public record.

INSTEAD, you are required to arbitrate the matter with JUDICIAL ARBITER GROUP. Because General Steel is a frequent CUSTOMER of Judicial Arbiter Group in Denver Colorado, [JAG] Judicial Arbiter Group has a vested financial interest in protecting General Steel from windfall judgements so that they continue to be the arbiter of choice named specifically in General Steel's contract. [ALL FALSE]  Arbitrations are expensive but General Steel requires you as the customer to be the one to foot the bill if you have a problem with them deciding to not deliver your building. Arbitrations cost upwards of $15,000 just to schedule! [ALL FALSE] Public Court venues are typically a much more affordable place to sort out contractual disagreements but General Steel knows this and selects the arbiter that treats them the best. [ALL FALSE] Apparently, Judicial Arbiter Group thinks this is something that will go unnoticed by news venues, city and state officials, and the droves of wronged General Steel customers. Well, it won't.  [ALL FALSE]

In many instances, requested document discovery by the wronged customers was PURPOSEFULLY DENIED BY THE FORMER TRIAL AND APPELLATE JUDGES who work for JAG in an effort to protect General Steel. [ALL FALSE] Several high profile cases have recently been stonewalled from appropriate discovery, reasonable monetary awards, and justice in general. Many customers who were scammed and had to spend tens of thousands of dollars pursuing their deposits back…were forced into a JAG Judicial Arbiter Group arbitrated hearing only to be awarded a SMALL FRACTION of their damages for the heartache and suffering brought on by General Steel Corporation & Jeffrey Knight. Beware. [ALL FALSE]

You can find many customers cases and stories in THE DIRT section of this website. Most were required to go to a Judicial Arbiter Group arbitration, only to be denied reasonable requests for discovery. Is the risk worth it? [ALL FALSE]

In short, beware. Jeffrey Knight & General Steel have been taking people's deposits and then increasing the price of people's buildings at will for years upon years. It seems as though practice makes perfect. [ALL FALSE]

# "GENERAL STEEL STOLE MY DEPOSIT [FALSE]– WHAT DO I DO?"

This is the BY FAR the most popular question we've been hearing through Contact Us submissions. It can be a little confusing and A LOT overwhelming when the smoke clears and you realize you've been getting the run around from a company you thought you could count on [General Steel Buildings]. So we're here to help. [ALL FALSE]

**Recently [May 6th, 2011], the Colorado Attorney General has decided to re-open their case against General Steel. DESPITE BEING FOUND GUILTY FOR DECEPTIVE TRADE PRACTICES, STEALING DEPOSITS & NOT DELIVERING BUILDINGS IN 2004, it appears from the filings, they continue to blatantly disregard the honorable Judge Jackson's orders. The motion for contempt can be found HERE.  [ALL FALSE] [THE LINK TAKES YOU TO ATTORNEY GRANT'S MOTION TO INTERVENE IN THE CLOSED ATTORNEY GENERAL CASE – THE COURT DENIED THE MOTION ON MARCH 12, 2012] [SIGNIFICANTLY, THE COLORADO ATTORNEY GENERAL IS INVESTIGATING CHUMLEY AND ARMSTRONG STEEL NOW – NOT GENERAL STEEL]**

L.  The extensive back-linking scheme described above constitutes false advertising;

M.  The false articles and blogs published by Chumley constitute false advertising;

N.  Defendants' use of the false Websites, including use of General Steel's name in metatags, and Defendants' publication of false articles and blogs deceive as to the approval of General Steel's commercial activities;

O.  Defendants' use of the false Websites, including use of General Steel's name in metatags, and Defendants' publication of false articles and blogs are likely

to cause confusion that the term "general steel" is a generic term for steel buildings;

P.     Defendants' use of the false Websites, including use of General Steel's name in metatags, and Defendants' publication of false articles and blogs are likely to cause confusion that Armstrong Steel sells "general steel" buildings;

Q.     The publication of the "Consumer Advocacy Alliance" letters constitutes false advertising;

R.     Among other things, the letters' statement that there was a trial in October 2012 is false;

S.     The letters' putative origin, the so-called "Consumer Advocacy Alliance," is false; and

T.     The telephone calls described above are false, in that the caller falsely claimed to be a representative or agent of a governmental authority.

57.     The misrepresentations described above are material, in that they are likely to influence purchasing decisions.

58.     The misrepresentations actually deceive or have the tendency to deceive a substantial segment of the audience.

59.     Defendants have placed the false or misleading statements in interstate commerce in connection with the sale of their goods or services.

60.     The Plaintiff has been and is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

61.     The acts and conduct of Defendants, as described above, constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

62.     As a direct and proximate result, General Steel has sustained damages and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages, as well as trebling of said damages and disgorgement of profits.  Said amounts will be proven at trial.

63.     General Steel is also entitled to temporary and/or final injunctions to prevent or restrain further violations.

**SECOND CLAIM FOR RELIEF**
**(Federal Unfair Competition - Lanham Act – 15 USC § 1125(a)(1)(A) – All Defendants)**

64.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 63 above.

65.     Defendants' use of the false Websites, including use of General Steel's name in metatags, Defendants' publication of false articles and blogs, and Defendants' false Consumer Advocacy Alliance Letters and fake attorney general phone calls, constitutes false or misleading representations of fact which:

    a.   deceive as to the affiliation of the Websites as websites by consumers;

    b.   deceive as to General Steel's commercial activities;

    c.   are likely to cause confusion or mistake as to the Websites and being established and published by consumers for consumers, when the Websites were established and published by Defendants to harm Plaintiff, disrupt the business of Plaintiff, and take business from Plaintiff for the benefit of Defendants;

    d.   are likely to cause confusion that the term "general steel" is a generic term for steel buildings;

    e.   are likely to cause confusion that Armstrong Steel sells "general steel" buildings;

f.   are likely to cause confusion that the attorney general is investigating General

Steel or soliciting complaints about General Steel; and

g.   are likely to cause confusion that the Consumer Advocacy Alliance letters are

from a governmental agency and contain truthful information about a current

governmental investigation or suit against General Steel and a restitution fund.

66.   The acts and conduct of Defendants, as described above, constitute unfair

competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

67.   As a direct and proximate result, General Steel has sustained damages and is

entitled to an award of actual, special, consequential and unjust enrichment/restitutionary

damages, as well as trebling of said damages and disgorgement of profits.  Said amounts will be

proven at trial.

68.   General Steel is also entitled to temporary and/or final injunctions to prevent or

restrain further violations.

### THIRD CLAIM FOR RELIEF
**(Copyright Infringement –17 U.S.C. §  501 et. seq. – All Defendants)**

69.   General Steel realleges and incorporates herein the allegations contained in

paragraphs 1 through 68 above.

70.   The Website contains a photograph of General Steel's President, Jeffrey Knight,

with his arms around his two daughters (the "Photo").  The Photo was taken on a 2009 family

vacation in Hawaii.  Mr. Knight and his daughters are in their swim suits in the Photo.  Chumley

has posted the Photo on www.steelbuildingcomplaints.com and previously on

www.generalsteelscam.com, in an effort to portray Mr. Knight and General Steel negatively.

71.     One of Mr. Knight's daughters took the Photo and the Copyright to the Photo has been assigned to General Steel.  General Steel is the Owner of the Copyright in the Photo.

72.     Defendants Chumley and Armstrong Steel have reproduced and used the Photo without permission or authorization from General Steel, Mr. Knight, or his daughter who took the Photo.  Defendants Chumley and Armstrong Steel have displayed the Photo on the Website in willful violation of General Steel's rights.

73.     Defendants Chumley and Armstrong Steel's display of the Photo on the Website constitutes copyright infringement.  On information and belief, hundreds or thousands of people have viewed the unlawful copy of the Photo on the Website.

74.     Defendants Chumley and Armstrong Steel's copyright infringement has damaged General Steel in an amount to be proven at trial.  Pursuant to 17 U.S.C. § 504(c), Defendants are liable for statutory damages of $150,000 per infringement, or in the alternative, General Steel's actual damages and Defendants' wrongful profits in an amount to be proven at trial; General Steel's attorney's fees pursuant to 17 U.S.C. § 505, and General Steel's costs.

**FOURTH CLAIM FOR RELIEF**
**(Violation of Anticybersquatting Consumer Protection Act – 15 U.S.C. § 1125(d) – All Defendants)**

75.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 74 above.

76.     General Steel is the owner of the mark "General Steel."

77.     Defendants, by and through their agents, employees, and co-conspirators, registered and used the domain name www.generalsteelscam.com.  Defendants have already

been found liable for their bad faith registration of the domain name www.generalsteelscam.com that was being used to disrupt General Steel's business and gain a competitive advantage.

78.     Defendants had a bad faith intent to disrupt General Steel's business and to profit from their use of the mark.

79.     The mark was distinctive at the time of registration by Defendants of the domain name www.generalsteelscam.com.

80.     The domain name www.generalsteelscam.com is identical or confusingly similar to the mark General Steel.

81.     As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(d(1), General Steel has sustained and is entitled to an award of actual, special, consequential damages, and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

82.     In addition, General Steel may elect at any time prior to final judgment by the trial court, to recover instead of actual damages, an award of statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

83.     The actions of Defendants make this an exceptional case which entitles General Steel to an award of costs, including reasonable attorneys' fees, and the trebling of damages.

### FIFTH CLAIM FOR RELIEF (Deceptive Trade Practices – Violation of Colorado Consumer Protection Act – All Defendants)

84.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 83 above.

85.     Defendants have engaged in deceptive trade practices within the meaning of C.R.S. § 6-1-105 by use of the false Websites, backlink network, metatags using General Steel's

mark, false articles, and fake attorney general phone calls, and false "Consumer Advocacy Alliance" letters, as alleged with specificity above, in order to mislead the public about General Steel and to gain customers for Armstrong Steel.

86.     Defendants have engaged in these practices in the course of their business.

87.     The above-described false representations constitute, *inter alia*, violations of:

(a) C.R.S. § 6-1-105(1)(c), (Knowingly making a false representation as to affiliation, connection, or association with or certification by another) (e.g. that the Websites are owned and/or controlled by disinterested consumers; that the false articles were authored by General Steel or its management).

(b) C.R.S. § 6-1-105(1)(e) (Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith) (*e.g.,* that the Websites are owned and/or controlled by disinterested consumers; that the false articles were authored by General Steel or its management, that the letters originate from a non-existent consumer protection organization, and that the telephone calls were placed by a government agent).

88.     C.R.S. § 6-1-105(1)(h) provides remedies against one who disparages the goods, services, property, or business of another by false or misleading representation of fact (*e.g*., false statements and misrepresentations and omissions on the Websites and articles and letters and calls, as alleged above).  In addition, the above-described acts and conduct of Defendants have a significant public impact because the misrepresentations are made uniformly to the public at

large to disparage General Steel and to induce the public to purchase steel buildings from

Defendants, and to cause harm to General Steel.

89.     The above-described acts and conduct of Defendants have injured General Steel.

90.     As a direct and proximate result of such acts and conduct, General Steel has

sustained damages and is entitled to an award of actual, special, consequential and unjust

enrichment/restitutionary damages.  Said amounts will be proven at trial.

91.     Pursuant to C.R.S. § 6-1-113(2)(a)(III), General Steel is entitled to an award of

treble damages.

92.     Pursuant to C.R.S. § 6-1-113(2)(b), General Steel is entitled to an award of costs

and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Common Law Unfair Competition – All Defendants)

93.     General Steel realleges and incorporates herein the allegations contained in

paragraphs 1 through 92 above.

94.     The acts and conduct of Defendants, as described above, constitute willful unfair

competition under applicable common law.

95.     As a direct and proximate result of such acts and conduct, General Steel has

sustained damages and is entitled to an award of actual, special, consequential, and punitive, and

unjust enrichment/restitutionary damages.   Said amount will be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### (Defamation – Libel Per Se – All Defendants)

96.     General Steel realleges and incorporates herein the allegations contained in

paragraphs 1 through 95 above.

97.     The Website, fake articles and blogs, and letters, are defamatory. Given the pervasive false and misleading statements on the Website and its false portrayal of itself as a site "by consumers, for consumers," the entire Website is defamatory.  Some of the defamatory publications are alleged above.

98.     Defendants' publications, in particular the Websites and fake articles and blogs, and letters, portray Plaintiff's business in a negative light or context, and therefore constitute libel *per se*.

99.     As a result of Defendants' defamation of Plaintiff, Plaintiff seeks special damages in an amount to be proven at trial, and actual damages including injuries to Plaintiff's reputation, in an amount to be proven at trial.  Plaintiff will also seek leave to pursue punitive damages.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment - against Defendants Chumley and Armstrong Steel)

100.     General Steel realleges and incorporates herein the allegations set forth in paragraphs 1 through 99 above.

101.     As a result of their acts, conduct and omissions described herein, Defendants Chumley and Armstrong Steel have been unjustly enriched at General Steel's expense.

102.     Under the circumstances described herein, it would be unfair to allow Defendants Chumley and Armstrong Steel to profit from their wrongdoing.

103.     Under the circumstances described herein, it would be unfair to allow Defendants to retain economic benefits without paying for them.

104.     As a direct and proximate result of the unjust enrichment of Defendants, General Steel is entitled to an award of restitutionary damages.

**NINTH CLAIM FOR RELIEF**
**(Intentional Interference with Prospective Business Advantage – Defendants**
**Chumley and Armstrong Steel)**

105.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 104 above.

106.     General Steel's name, reputation, and goodwill represent an intangible asset and prospective business advantage of General Steel with regard to the procurement of internet hits, development of internet leads, and achievement of building sales through website advertising.

107.     The Websites, false articles, blogs and letters have caused potential customers of General Steel to not do business with General Steel.  It is believed that many prospective customers have not contacted General Steel at all after reading the Websites, false articles, blogs and letters.  Other customers who have contacted and/or contracted with General Steel have read the Websites and/or false articles and blogs and letters and discontinued their dealings with General Steel because of reading the Websites, false articles, blogs, or letters.  Defendants knew or reasonably should have known of General Steel's name, reputation, and goodwill, and the value of such assets with regard to the conduct of website advertising.

108.     Defendants knew or reasonably should have known that publishing false Websites, articles, blogs, and letters, would cause General Steel customers and potential customers to not do business with General Steel.  In fact, this was a primary goal of Defendants, to disrupt General Steel's business, cause General Steel harm, and take General Steel customers.

109.     Defendants' interference with General Steel's prospective business advantage was improper.

110.     Defendants' intentional interference with the prospective business advantage of General Steel has caused General Steel to sustain actual, special, consequential, lost profits, and unjust enrichment/restitutionary damages.  Said amounts will be proven at trial.

111.     In addition, Defendants' conduct was attended by circumstances of fraud, malice and willful and wanton behavior.  As a result, General Steel will seek leave to be awarded punitive damages.

## TENTH CLAIM FOR RELIEF
### (Civil Conspiracy – All Defendants)

112.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 111 above.

113.     Defendants, acting as a malicious combination of two or more persons, agreed upon an unlawful common objective to be accomplished involving unlawful acts and unlawful purposes.

114.     Each Defendant committed one or more overt acts in furtherance of the common objective.

115.     As a proximate result of the conspiracy, General Steel incurred injury and pecuniary loss, resulting in actual and consequential damages.

116.     In addition, Defendants' conduct was attended by circumstances of fraud, malice and willful and wanton behavior.  As a result, General Steel will seek leave to be awarded punitive damages.

**ELEVENTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets – C.R.S. § 7-4-101 et. seq. – Against Defendants**
**Chumley and Armstrong Steel)**

117.     General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 116 above.

118.     Defendants Chumley and Armstrong Steel have gained access to General Steel's valuable customer information and customer lists and/or databases which are protected trade secrets.

119.     Defendants Chumley and Armstrong Steel gained access to General Steel's trade secrets by improper means.  General Steel took reasonable measures to protect this information, including password protected databases, and requiring all employees to enter confidentiality and non-disclosure agreements.

120.     C.R.S. § 7-74-103 provides for temporary and final injunctions including affirmative acts to be granted by the court on equitable terms to prevent or restrain actual or threatened misappropriation of trade secrets.  General Steel requests a temporary and final injunction requiring Defendants Chumley and Armstrong Steel to immediately turn over all General Steel customer information and/or databases to General Steel that they have in their possession and/or control.

121.     C.R.S. § 7-74-104 provides for damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or

use of a trade secret. Because the misappropriation is attended by circumstances of fraud, malice, or a willful and wanton disregard of the injured party's right and feelings, the court or the jury may award exemplary damages.  Accordingly, General Steel will seek leave to recover exemplary damages, as allowed by Colorado law.

### TWELFTH CLAIM FOR RELIEF
**(Intentional Interference with Contract - against Defendants Chumley and Armstrong Steel)**

122.    General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 121 above.

123.    Upon information and belief, General Steel had contracts with hundreds of customers that Defendants Chumley and Armstrong contacted through fake letters and calls that Chumley and Armstrong sent and/or made to General Steel's customers.

124.    Upon information and belief, Defendants Chumley and Armstrong Steel illegally accessed computer databases and/or networks in order to access and steal General Steel's customer information.

125.    Upon information and belief, Defendants Chumley and Armstrong Steel caused the U.S. Mails to be used to mail hundreds of Priority Mail envelopes containing false letters from the bogus "Consumer Advocacy Alliance – General Steel Investigation Unit" to General Steel's customers.

126.    Upon information and belief, Defendants Chumley and Armstrong Steel used the return address on the mailings of 8100 East Maplewood Avenue #200, Greenwood Village, Colorado 80111.  The company located at that address has nothing to do with the fake letters and mass mailings.

127.    As a result of the mailings, General Steel has incurred extensive damage, loss of goodwill, loss of reputation, and is presently incurring and will be incurring damage because of the fake mailings and theft of General Steel's customer information.  As a proximate result of the mailings, General Steel has incurred injury and pecuniary loss, resulting in actual and consequential damages, and believes that the damages are presently not fully known.

128.    In addition, Defendants' conduct was attended by circumstances of fraud, malice and willful and wanton behavior.  As a result, General Steel will seek leave to be awarded punitive damages.

### THIRTEENTH CLAIM FOR RELIEF
### (Trademark Infringement – All Defendants)

129.    General Steel realleges and incorporates herein the allegations contained in paragraphs 1 through 128 above.

130.    General Steel is the owner of the mark GENERAL STEEL.

131.    Defendants used the words or name General Steel in the link farm, in the metatags of the blog network websites, and in the in the articles, in an intentional and deliberate effort to disrupt and harm General Steel's business, and to sell steel buildings to customers and/or potential customers of General Steel.

132.    Moreover, the extensive and pervasive uses by Defendants of the terms "General Steel," "general steel," "General Steel Buildings," and "general steel buildings" in their Internet advertising and metatags impermissibly trades upon the goodwill that General Steel has created in its mark. It has generated initial interest confusion among customers and had caused likelihood of confusion and actual confusion.  The extensive and pervasive uses by Defendants of the terms "General Steel," "general steel," "General Steel Buildings," and "general steel

buildings" in their Internet advertising and metatags, and in their links to

www.steelbuildingcomplaints.com and to Armstrong Steel's own website and press releases is

likely to cause confusion, mistake or deception as to the source, sponsorship, or approval of the

Parties' products in that consumers are likely to erroneously believe that these Defendants are in

some way legitimately connected with, sponsored by, licensed by, or otherwise related to

General Steel.  Defendants' use of General Steel and variations thereof in their bogus blog

network and advertising also causes confusion or is likely to cause consumer confusion as to

General Steel not being the well-known name of Plaintiff, but rather, a term generically used to

refer to steel buildings, when it is not.  Defendants' ill-contrived scheme to use the words

"General Steel" and variations thereof, hundreds or thousands of times on the internet in the

bogus blog network and elsewhere causes confusion and/or is likely to cause confusion.

133.    Defendants' use of the words or name General Steel caused confusion, mistake,

and/or deception within the steel building industry and the consuming public as to the source,

sponsorship or approval of Defendants' products in that consumers were likely to erroneously

believe that Defendants were in some way legitimately connected with, sponsored, licensed by,

or otherwise related to General Steel in violation of the Lanham Act, 15 U.S.C. § 1114(1) and

1125(a).

134.    Defendants used the words or name General Steel with knowledge of General

Steel's senior use.

135.    The acts and conduct of Defendants constituted infringements of the trademarks

of General Steel.

136.    Defendants have committed knowing, willful, and deliberate infringements of General Steel's trademark.

137.    As a direct and proximate result of the infringements of General Steel's trademark, General Steel sustained and is entitled to an award of actual, special, consequential and unjust enrichment/restitutionary damages, including lost profits and/or reasonable royalties. Said amounts will be proven at trial.

138.    General Steel is also entitled to:

      a.    Disgorgement of profits pursuant to 15 U.S.C. § 1117;

      b.    Treble damages pursuant to U.S.C. § 1117;

      c.    Attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and

      d.    Punitive damages as will be sought after obtaining leave of Court.

## PRAYER FOR RELIEF

WHEREFORE, General Steel prays for the following relief:

A.    <u>False Advertising and Federal Unfair Competition</u>.    On its First and Second Claims for Relief:

1.    A permanent injunction enjoining Defendants, their agents, servants, employees, franchisees, representatives, successors, assignees, and those in privity from using of the false advertising described in the Second Claim for Relief.

2.    A Court Order that said Defendants file with the Court, and serve on General Steel within ten (10) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which said Defendants have complied with the injunction.

3.      Actual, consequential, special, and unjust enrichment/restitutionary damages, lost profits, reasonable royalties, and other monetary relief in an amount to be proven at trial.

4.      Disgorgement of profits.

5.      Treble damages.

6.      Prejudgment interest.

7.      Attorneys' fees and costs.

8.      Punitive damages will be sought after obtaining leave of Court.

9.      Such other and further relief as the Court deems just and equitable under the circumstances.

B.      <u>Copyright Infringement.</u>    On its Third Claim for Relief:

1.      Pursuant to 17 U.S.C. § 504(c), Defendants are liable for statutory damages of $150,000 per infringement, or in the alternative, General Steel's actual damages and Defendants' wrongful profits in an amount to be proven at trial.

2.      Pursuant to 17 U.S.C. § 505, General Steel is entitled to an award of attorney's fees and costs.

C.      <u>Violation of Anticybersquatting Consumer Protection Act.</u>    On its Fourth Claim for Relief:

1.      As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(d1), General Steel has sustained and is entitled to an award of actual, special, consequential damages, and unjust enrichment/restitutionary damages.

2.      In addition, General Steel may elect at any time prior to final judgment by the trial court, to recover instead of actual damages, an award of statutory damages in an amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

3.      General Steel is entitled to an award of costs, including reasonable attorneys' fees, and the trebling of damages.

D.      <u>Deceptive Trade Practices</u>.     On its Fifth Claim for Relief:

1.      As a direct and proximate result of such acts and conduct, General Steel has sustained damages and is entitled to an award of actual damages.

2.      Pursuant to C.R.S. § 6-1-113(2)(a)(III), General Steel is entitled to an award of treble damages.

3.      Pursuant to C.R.S. § 6-1-113(2)(b), General Steel is entitled to an award of costs and reasonable attorneys' fees.

4.      Pre-judgment interest.

5.      Such other and further relief as the Court deems just and equitable under the circumstances.

E.      <u>Unfair Competition</u>.  On its Sixth Claim for Relief:.

1.      General Steel is entitled to an award of actual, special, consequential, and punitive, and unjust enrichment/restitutionary damages, including disgorgement of profits, that will be proven at trial.

F.      <u>Defamation</u>.  On its Seventh Claim for Relief:

1.      General Steel is entitled to an award of actual and special damages.

2.      Punitive damages will be sought after obtaining leave of Court.

G.      Unjust Enrichment.  On its Eighth Claim for Relief:

        1.      General Steel is entitled to an award of restitution, including disgorgement of

profits.

H.      Intentional Interference with Prospective Business Advantage.     On its Ninth Claim for

Relief:

        1.      General Steel is entitled to an award of actual, special, consequential, lost profits,

and unjust enrichment/restitutionary damages.

        2.      General Steel is also entitled to punitive damages.

I.      Civil Conspiracy.     On its Tenth Claim for Relief:

        1.      General Steel is entitled to an award of actual and consequential damages.

        2.      Punitive damages will be sought after obtaining leave of Court.

J.      Misappropriation of Trade Secrets.     On its Eleventh Claim for Relief:

        1.      General Steel requests a temporary and final injunction requiring Defendants

Chumley and Armstrong Steel to immediately turn over all General Steel customer information

and/or databases to General Steel that they have in their possession and/or control.

        2.      General Steel seeks damages including both actual loss damages and unjust

enrichment / restitutionary recovery.

        3.      Punitive damages will be sought after obtaining leave of Court.

K.      Intentional Interference with Contract.     On its Twelfth Claim for Relief:

        1.      General Steel is entitled to an award of actual and consequential damages that are

not presently fully known.

        2.      Punitive damages will be sought after obtaining leave of Court.

L.      Trademark Infringement.  On its Thirteenth Claim for Relief:

1.      A permanent injunction enjoining Defendants, their agents, servants, employees, franchisees, representatives, successors, assignees, and those in privity from using the words or names "General Steel" or "General Steel Buildings", or any other words or names that are confusingly similar to General Steel in their internet or other advertising or marketing, or for any other purpose.

2.      A Court Order that said Defendants file with the Court, and serve on General Steel within ten (10) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which said Defendants have complied with the injunction.

3.      Actual, consequential, special, and unjust enrichment/restitutionary damages, including disgorgement of profits, lost profits, reasonable royalties, and other monetary relief in an amount to be proven at trial.

4.      Disgorgement of profits.

5.      Treble damages.

6.      Prejudgment interest.

7.      Attorneys' fees and costs.

8.      Punitive damages will be sought after obtaining leave of Court.

9.      Such other and further relief as the Court deems just and equitable under the circumstances.

M.        All other and further relief as this Court deems just, proper or appropriate.

## **JURY DEMAND**

**PLAINTIFF REQUESTS TRIAL TO A JURY ON ALL CLAIMS SO TRIABLE**

DATED:  March 25, 2013

                                    Respectfully Submitted,

                                     /s/ David S. Fein_____
                                    David S. Fein, Reg. No. 18788
                                    Patrick D. Frye, Reg. No. 30369
                                    Building Services Group, LLC Legal Dept.
                                    10639 Bradford Road
                                    Littleton, CO 80127

                                    Attorneys for Plaintiff General Steel Domestic
                                    Sales, LLC, d/b/a General Steel Corporation