**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-00769-MSK-KMT

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a
GENERAL STEEL CORPORATION, a Colorado limited liability company,

        Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually;
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION;  PRQ INTERNET KOMMANDITBOLAG
(LIMITED PARTNERSHIP) doing business as PRQ INET KB; and GOTTFRID
SWARTHOLM, individually.

        Defendants,

v.

JEFFREY KNIGHT, individually

---

**ANSWER TO PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND
AND DEFENDANTS' COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

---

        Defendant Atlantic Building Systems, LLC d/b/a Armstrong Steel Corporation

("Armstrong") and Ethan Chumley, an individual ("Mr. Chumley") respectfully submit

this Answer to Plaintiff's Amended Complaint and Jury Demand filed by Plaintiff

General Steel Domestic Sales, LLC ("General Steel") [CM-ECF Document #101] and

state as follows:

## I. JURISDICTION AND VENUE

1)  Defendants admit that this Court has jurisdiction over claims asserted by General

    Steel which arise under the Lanham Act, 15 U.S.C. § 1051 et. seq., 28 U.S.C. §

1338(a) and (b), and 28 U.S.C. § 1331. Defendants admit that this Court has jurisdiction over the claims in this action that arise under the laws of the State of Colorado pursuant to 28 U.S.C. § 1367(a). Defendants admit that both Mr. Chumley and Armstrong do business and reside in the State of Colorado. Defendants deny any remaining allegations in paragraph 1 of the Amended Complaint.

2) Defendants admit that the venue is proper in the Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a). Defendants deny the remaining allegations of paragraph 2 of the Amended Complaint.

## II. PARTIES

3) Defendants admit that General Steel is a Colorado limited liability company having its principal place of business located at 10639 Bradford Road, Littleton, Colorado 80127. Defendants admit that General Steel is a distributor of pre-fabricated steel buildings. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations General Steel makes as to being one of the nation's leading distributors of pre-fabricated steel buildings and therefore deny the same.

4) Defendants admit the allegations in paragraph 4 of the Amended Complaint.

5) Defendants admit the allegations in paragraph 5 of the Amended Complaint.

6) Defendants admit that Defendant PRQ Internet Kommanditbolag (Limited Partnership), d/b/a PRQ Inet KB, (hereafter "PRQ") is identified by WHOIS as the Registrant (Owner) of the domain name and website for www.steelbuildingcomplaints.com and previously www.generalsteelscam.com. Defendants are without information or knowledge sufficient to form a belief as to the

truth of the allegations of the rest of paragraph 6 of the Amended Complaint and therefore deny the same.

7) Defendants admit that Gottfrid Swartholm, a/k/a, Gotttfrid Svartholm, a/k/a Gottfrid Swartholm Warg (hereafter "Swartholm") is identified by WHOIS as the Registrant (along with PRQ) for www.steelbuildingcomplaints.com and previously for www.generalsteelscam.com. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations of the rest of paragraph 7 of the Amended Complaint and therefore deny the same.

### III. GENERAL ALLEGATIONS

### A. Background

8) Defendants admit Mr. Chumley worked for General Steel from October 2004 until July of 2005.  The Defendants deny the remaining allegations contained in paragraph 8 of the Amended Complaint.

9) Defendants admit that, seven (7) years ago, Mr. Chumley sent e-mails to certain employees at General Steel.  Defendants deny the remaining allegations in paragraph 9 of the Amended Complaint.

10) Defendants admit the allegations in paragraph 10 of the Amended Complaint.

11) Defendants admit to being notified by General Steel in early 2010 that they were allegedly using General Steel's trademarked name in their Google Sponsored Ad text and allegations that Defendants were engaging in false advertising. However, in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013) the Court found Defendants' actions did not

constitute trademark infringement. *Id*. at *9.  Defendants deny all remaining allegations in paragraph 11 of the Amended Complaint.

12) Defendants admit the allegations in paragraph 12 of the Amended Complaint except for the statement that no decision has yet been issued by the Federal Court, to which the Defendants deny.

**B. Chumley's False Advertising Through Use of Fake Consumer Watchdog Websites**

13) Defendants admit that the website Registrant for www.generalsteelscam.com identified as PRQ.eNom, Inc. in the WHOIS database.  Defendants further admit that, in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013) the Court found that Plaintiff failed to prove that any content on such website was false.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the rest of the allegation of paragraph 13 of the Amended Complaint and therefore deny the same.

14) Defendants admit that the website www.generalsteelscam.com stated that it was a site "by consumers, for consumers." Defendants deny the rest of the allegations in paragraph 14 of the Amended Complaint.

15) Defendants admit the allegations in paragraph 15 of the Amended Complaint.

16) Defendants admit the allegations in paragraph 16 of the Amended Complaint.

17) Defendants admit that paragraph 17 of the Amended Complaint includes portions of the WIPO Decision, and that the decision by the Australian WIPO Arbitrator is neither binding nor admissible in this proceeding.

18) Defendants deny the allegations in paragraph 18 of the Amended Complaint.

19) Defendants deny the allegations in paragraph 19 of the Amended Complaint.

20) Defendants deny the allegations in paragraph 20 of the Amended Complaint.  In further response to the allegations in paragraph 20 of the Amended Complaint, Defendants state that, to the extent www.steelbuildingcomplaints.com contains identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

21) Defendants admit that according to the WHOIS database PRQ.eNom, Inc. is the registrant of www.steelbuildingcomplaints.com and www.generalsteelscam.com.

22) Defendants deny the allegations in paragraph 22 of the Amended Complaint.  In further response to the allegations in paragraph 22 of the Amended Complaint, Defendants state that, to the extent www.steelbuildingcomplaints.com contains identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

### C. Marketing of steelbuildingcomplaints.com

23) Defendants admit to owning blogs that link to their own website and that some of these blogs also link to other websites that are not affiliated with Defendant, including www.steelbuildingcomplaints.com.  Defendants deny the remaining allegations in paragraph 23 of the Amended Complaint.

24) Defendants deny the allegations in paragraph 24 of the Amended Complaint.  In further response to the allegations in paragraph 24 of the Amended Complaint, Defendants state that, to the extent www.steelbuildingcomplaints.com contains identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

25) Defendants admit to linking to www.steelbuildingcomplaints.com on some of their blogs.  Defendants are without information or knowledge sufficient to form a belief as to the back links on www.generalsteelscam.com and www.steelbuildingcomplaints.com that increase the position of the sites for internet search results and rankings and therefore deny the same. Defendants deny the remaining allegations in paragraph 25 of the Amended Complaint.

26) Defendants admit to owning blogs that link to their own website.  Defendants deny the remaining allegations in paragraph 26 of the Amended Complaint.

27) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 27 of the Amended Complain and therefore deny the same.

28) Defendants admit to owning certain blogs.  Defendants deny the remaining allegations in paragraph 28 of the Amended Complaint.

29) Defendants admit to linking to www.steelbuildingcomplaints.com on certain of their blogs. Defendants deny the remaining allegations in paragraph 29 of the Amended Complaint.

**D. General Steel's History and Impact of steelbuildingcomplaints.com**

30) Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint and therefore deny the same.

31) Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Amended Complaint and therefore deny the same.

32) Defendant admits to running a pay-per-link advertising with the term "general steel" and "general steel buildings" as keywords. Defendant denies the remaining allegations in paragraph 32 of the Amended Complaint.

33) Defendants deny the allegations in Paragraph 33 of the Amended Complaint.

34) Defendants deny the allegations in paragraph 34 of the Amended Complaint.

35) Defendants admit testifying to the amount of Armstrong's revenues at the July 2012 Trial held in 10-cv-01398.  Defendants deny the remainder of paragraph 35 of the Amended Complaint.

**E. The Fake Websites, Articles, and Blogs Purporting to be Written by General Steel and its Management**

36) Defendants deny the allegations in paragraph 36 of the Amended Complaint.

**F. Chumley's Fraudulent Telephone and Mail Attack**

37) Defendants deny the allegations in paragraph 37 of the Amended Complaint.

38) Defendants deny the allegations in paragraph 38 of the Amended Complaint.

39) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 39 of the Amended Complaint and therefore deny the same.

40) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 40 of the Amended Complaint and therefore deny the same.

41) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 41 of the Amended Complaint and therefore deny the same.

42) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 42 of the Amended Complaint and therefore deny the same.

43) Defendants deny the allegations in paragraph 43 of the Amended Complaint.

44) Defendants deny the allegations in paragraph 44 of the Amended Complaint.

### G. Injury

45) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 45 of the Amended Complain and therefore deny the same.

### IV. CLAIMS FOR RELIEF

### COUNT I

### False Advertising

46) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 through 45 above as though fully supported herein.

47) Defendants admit that Armstrong is in competition with General Steel, and to owning certain blogs. Defendants deny the remaining allegations having to do with either Mr. Chumley or Armstrong in paragraph 47 of the Amended Complaint. Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations A-N in paragraph 47 of the Amended Complaint and therefore deny the same.

48) Defendants deny the allegations in paragraph 48 of the Amended Complaint.

49) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 49 of the Amended Complaint and therefore deny the same.

50) Defendants are without information or knowledge sufficient to form a belief as to the truth of paragraph 50 of the Amended Complaint and therefore deny the same.

51) Defendants deny the allegations in paragraph 51 of the Amended Complaint.

52) Defendants deny the allegations in paragraph 52 of the Amended Complaint.

53) Defendants deny the allegations in paragraph 53 of the Amended Complaint.

54) Defendants deny the allegations in paragraph 54 of the Amended Complaint.

55) Defendants deny the allegations in paragraph 55 of the Amended Complaint.

## COUNT II

### Violation of Anticybersquatting Consumer Protection Act

56) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 through 55 above as though fully set forth herein.

57) Defendants deny that that General Steel is the owner of the mark "General Steel." Defendants admit that General Steel claims to be the owner of word mark "General Steel Corporation."

58) Defendants deny being responsible for the registration of the domain name www.generalsteelscam.com. Defendants admit to being found responsible for the registration of the domain name www.generalsteelscam.com by a foreign WIPO arbitration panel located in Australia.  However such decision is neither binding nor

admissible in this case.  Defendants deny the remaining allegations in paragraph 58 of the Amended Complaint.

59) Defendants deny the allegation in paragraph 59 of the Amended Complaint.

60) Defendants are without information of knowledge sufficient to form a belief as to the truth of paragraph 60 of the Amended Complaint and therefore deny the same.

61) Defendants deny the allegations in paragraph 61 of the Amended Complaint.

62) Defendants deny the allegations in paragraph 62 of the Amended Complaint.

63) Defendants deny the allegations in paragraph 63 of the Amended Complaint.

64) Defendants deny the allegations in paragraph 64 of the Amended Complaint.

## COUNT III

### Defamation

65) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 through 64 above as though fully set forth herein.

66) Defendants are without information or knowledge sufficient to for a belief as to the truth of paragraph 66 of the Amended Complaint and therefore deny the same.  In further response to the allegations in paragraph 66 of the Amended Complaint, Defendants state that, to the extent paragraph 66 refers to identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

67) Defendants deny the allegations in paragraph 67 of the Amended Complaint.  In further response to the allegations in paragraph 67 of the Amended Complaint,

Defendants state that, to the extent paragraph 67 refers to identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

68) Defendants deny the allegations in paragraph 68 of the Amended Complaint.  In further response to the allegations in paragraph 68 of the Amended Complaint, Defendants state that, to the extent paragraph 68 refers to identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

69) Defendants deny the allegations in paragraph 69 of the Amended Complaint.  In further response to the allegations in paragraph 69 of the Amended Complaint, Defendants state that, to the extent paragraph 69 refers to identical or similar content to www.generalsteelscam.com, the Court in *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM WL 1900562 (D.Colo. May 7, 2013), already found that Plaintiff failed to prove any such content was false.

## COUNT IV

### **Unjust Enrichment**

70) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 though 69 above as though fully set forth herein.

71) Defendants deny the allegations in paragraph 71 of the Amended Complaint.

72) Defendants deny the allegations in paragraph 72 of the Amended Complaint.

73) Defendants deny the allegations in paragraph 73 of the Amended Complaint.

74) Defendants deny the allegations in paragraph 74 of the Amended Complaint.

## COUNT V

### Civil Conspiracy

75) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 though 74 above as though fully set forth herein.

76) Defendants deny the allegations in paragraph 76 of the Amended Complaint.

77) Defendants deny the allegations in paragraph 77 of the Amended Complaint.

78) Defendants deny the allegations in paragraph 78 of the Amended Complaint.

79) Defendants deny the allegations in paragraph 79 of the Amended Complaint.

## COUNT VI

### Misappropriation of Trade Secrets

80) Defendants reallege and incorporate by reference each and every response to the allegations contained in paragraphs 1 through 79 above as though fully set forth herein.

81) Defendants deny the allegations in paragraph 81 of the Amended Complaint.

82) Defendants deny the allegations in the first sentence of paragraph 82 of the Amended Complaint. Defendants are without information of knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 82 of the Amended Complaint and therefore deny the same.

83) The allegation in the first sentence of paragraph 83 of the Amended Complaint is a legal conclusion for which no response is required.  Defendants deny the allegations in paragraph 83 concerning Mr. Chumley and Armstrong.

84) The allegations in paragraph 84 of the Amended Complaint are legal conclusions for which no response is required.

85) Defendants deny the allegations in paragraph 85 of the Amended Complaint.

86) The allegations in paragraph 86 of the Amended Complaint are legal conclusions for which no response is required.

## V. DEFENDANTS' AFFIRMATIVE DEFENSES

87) The Amended Complaint fails to state a claim upon which relief can be granted.

88) Plaintiff is not entitled to any relief because any alleged statements made by Defendants were true.

89) Plaintiff is not entitled to any relief because any alleged statements made by Armstrong or its agents are subject to privilege or qualified privilege.

90) Plaintiff is not entitled to any relief to the extent that Plaintiff sustained no injury or damage as a proximate result of any act or statement made by or attributable to Armstrong or Chumley.

91) Any damages suffered by General Steel, if any, were proximately caused by third parties outside the control of Defendants.

92) Plaintiff's requested damages are speculative and or unavailable as a matter of law to Plaintiff.

93) Plaintiff's claims are barred by applicable statutes of limitations.

94) Plaintiff failed to mitigate its damages, if any.

95) Plaintiff is not entitled to any relief to the extent it forfeited its right to relief under the doctrines of laches, or unclean hands, waived its right to relief, or is estopped from seeking the relief requested in the Amended Complaint.

96) Plaintiff's claims are subject to offset for damages due and owing to Plaintiff.

97) Plaintiff's claims are barred by its tortious conduct.

98) Plaintiff's claims are barred by claim preclusion and issue preclusion, i.e., *res judicata* and collateral estoppel.

99) Defendants presently have insufficient knowledge or information upon which to form a belief whether there may be additional, as yet unstated, defenses and reserves the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

## VI. COUNTERCLAIMS AGAINST GENERAL STEEL AND THIRD-PARTY CLAIM AGAINST JEFFREY KNIGHT

100)   Counterclaimant/Third-Party Plaintiff Atlantic Building Systems, LLC, a Delaware corporation, d/b/a Armstrong Steel Corporation ("Armstrong"), by and through its attorneys, state and allege as follows in support of its counterclaims and third-party claims against Counterclaim Defendant General Steel Domestic Sales, LLC, d/b/a General Steel Corporation ("General Steel") and Third-Party Defendant Jeffrey Knight ("Knight"):

### A. BACKGROUND

101)   General Steel, at the direction of Knight, has engaged in copyright infringement and false advertising with the dual purpose of misleading the public as to the nature and quality of their goods as well as harming Armstrong's reputation in the steel

14

building market. General Steel is actively trying to eliminate Armstrong as its competitor in the marketplace. General Steel, through its false online advertising and marketing, is attempting to achieve greater commercial success by deceiving the public into believing that it sells Armstrong Steel Buildings and that it is a longstanding steel fabricator and manufacturer.

102)   Among its many and widespread false advertisements General Steel has 1) falsely advertised using a colorable imitation of Armstrong's logo replacing the terms Armstrong Steel with "Fraudulent Steel"; 2) represented itself, on hundreds of internet advertisements, as a manufacturer of steel buildings; 3) that General Steel has been in business since 1928; 4) that General Steel provides "quality steel" to auto manufacturers; 5) that General Steel produces automotive rims; 6) that General Steel supplied the allies in World War II with armor, tanks and turrets in order to fight off the Germans.; 7) that the NFL's Pittsburgh Steelers were named by a General Steel employee; 8) that General Steel was used in the World Trade Center towers; 9) that General Steel has 30,000 satisfied customers; and 10) that General Steel was the leading steel company in the United States in the 1950s and 1960s.

103)   All of these false advertisements are part of an underhanded campaign of deception with the sole purpose of attempting to present the image that General Steel is a longstanding, trustworthy company, when in reality nothing is further from the truth.

104)   Armstrong has established a reputation as a reliable provider of a quality product.

105)   Armstrong delivers its products to its customers across the country and around the world.

106)    General Steel has illegally used Armstrong's trademark in order to tarnish its

reputation, drive away customers, and mislead Armstrong's customers into believing

General Steel sells Armstrong Steel Buildings by redirecting Armstrong customers to

General Steel's websites all in an attempt to cause harm to Armstrong's sales and

drive Armstrong out of business.

107)    Armstrong brings counterclaims and third-party claim of Copyright Infringement

and Lanham Act False Advertising against General Steel and Knight.

## B. PARTIES

108)    Counterclaimant/Third-Party Plaintiff Atlantic Building Systems, LLC, which

also does business as Armstrong Steel Corporation ("Armstrong"), whose principal

place of business is 5889 S. Greenwood Plaza Blvd., Suite 300, Greenwood Village,

Colorado 80111.

109)    Upon information and belief, Counter-Defendant General Steel Domestic Sales,

LLC, d/b/a General Steel Corporation ("General Steel") is a Colorado limited liability

company having its principal place of business located at 10639 Bradford Road,

Littleton, Colorado 80127.  Third-Party Defendant Knight is the owner and chief

executive officer of General Steel.  Upon information and belief, Knight formulates

controls, directs, supervises, perpetuates, manages and has knowledge of and

acquiesces in the practices and policies of General Steel to such a degree as to make

him personally liable for the claims alleged herein.  In addition, Knight knew or

should have known of marketing and advertising practices used by employees or

agents working on his and General Steel's behalf.

## C. JURISDICTION AND VENUE

110)    This Court has jurisdiction over the claims that arise under the laws of the State of
Colorado pursuant to 28 U.S.C. § 1367(a), and jurisdiction over this civil action
pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a) and (b),
and 28 U.S.C. § 1331.

111)    This Court has personal jurisdiction over General Steel and Knight because both
are citizens and residents of Colorado that regularly transact business in Colorado,
because much of the wrongful conduct of General Steel and Knight has occurred in
Colorado and because General Steel has consented to the jurisdiction of this Court by
the filing of the present action.

112)    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400.

## D. HISTORY OF THE PARTIES

113)    Armstrong is a seller of pre-engineered steel buildings. Armstrong markets and
sells its buildings throughout the United States and internationally. Over the years,
Armstrong has continued to grow and develop into a leading steel building provider.

114)    Prior to establishing Armstrong Steel, Ethan Chumley ("Mr. Chumley") worked
as an employee of General Steel. After leaving General Steel, Mr. Chumley was
employed by a competitor of General Steel, Olympia Steel.

115)    After Mr. Chumley's departure, General Steel brought arbitration actions against
Chumley, Olympia Steel, and the other employees who left at the same time to accept
employment with Olympia Steel, in an attempt to enforce illicit non-compete
agreements. This matter was decided against General Steel and Mr. Chumley was
awarded his attorney's fees.

116)    In 2006, Mr. Chumley established Atlantic Building Systems.

117)     Armstrong uses the Internet and the Web for advertising through its website, press

releases, and paid advertisements on several search engine websites. In addition to its

online activities Armstrong Steel has also used satellite radio and print advertising to

establish its brand. Armstrong has expended great amounts of time, money and

resources to create a strong presence in the marketplace and on the internet in support

of its reputation and brand.

118)     Upon information and belief, General Steel has been operating since 1995.

General Steel is a broker of steel buildings and does not staff engineers, detailers or

draftsmen. General Steel also does not manufacture or fabricate steel buildings, or

other steel products.

119)     During its eighteen year history, General Steel has been involved in numerous

litigation and arbitration matters directly related to its poor and fraudulent business

practices.

120)     In 2004, the Attorney General for the State of Colorado filed a lawsuit against

General Steel and certain individuals, including Knight, seeking injunctive relief and

damages under Colorado's Consumer Protection Act, Case No. 04CV143, District

Court for Jefferson County, Colorado (the "AG's Case"), for General Steel's

longstanding and widespread use of deceptive sales practices.

121)     On December 7, 2004, the court entered its Findings, Conclusions and Order of

Judgment in which it, among other things, found General Steel and Knight liable for

violating the CCPA, imposed monetary penalties on them, and enjoined General Steel

and certain individuals, including Knight, from continuing to use certain misleading

and deceptive business practices, noting generally that "there is no place in our

society for the dishonesty and deception characteristic of General Steel's approach to marketing.".  See Exhibit I  attached hereto.

122)    Specifically, pursuant to the order in the AG's Case, General Steel and Knight were permanently enjoined from doing the following:  General Steel may not represent by inference, implication, or express statement … that General Steel is the manufacturer of the buildings and component parts in the sense of having a plant or doing the physical fabrication of the buildings.  Exhibit I at 39.

123)    The court in the AG's case also permanently enjoined General Steel and Knight "from engaging in any of the deceptive practices described in this order" and "from engaging in any actions contrary to the Colorado Consumer Protection Act."  Exhibit I at p. 39.

124)    Ultimately, General Steel agreed to resolve the AG's Case through a Consent Decree entered on March 8, 2007 which, among other things, required General Steel to pay the Colorado Attorney General $4,500,000.00 in damages and imposed a permanent injunction on General Steel and Knight prohibiting them from using deceptive business practices.  See Exhibit J attached hereto.

125)    Like Colorado, other states launched similar actions or publicized warnings to its citizens regarding General Steel's widespread use of deceptive business practices.  For example, the State of California filed a lawsuit against General Steel in *People of The State of California v. General Steel Domestic Sales, LLC, et al.*, 05-AS-03689, and, in 2005, the New Mexico Attorney General's Office issued a press release warning churches in the state to beware of General Steel and its false advertising often directed at churches and other charitable organizations.  A copy of the press

release can be found at http://www.nmag.gov/Articles/archive/2005/html/11-02-05_general_steel.htm.

126)   In addition, dozens of consumers initiated legal proceedings against General Steel based on General Steel's deceptive business practices.  For example, in this District alone, General Steel has been a party in the following cases involving its deceptive business practices:

a)   *General Steel Corporation, et al. v. World Missions Ministries, Inc.*, Case No. 06cv245-PSF-MEH;

b)   *General Steel Domestic Sales, LLC v. Brown, et al.*, Case No. 06cv753-MSK-PAC;

c)   *General Steel Domestic Sales, LLC v. Asbery*, Case No. 07cv730-MSK;

d)   *Amicorp, Inc. v. General Steel Domestic Sales, LLC*, Case No. 07cv1105-LTB-BNB;

e)   *Heinbaugh, et al. v. General Steel Domestic Sales, LLC, et al.*, Case No. 07cv2551-EWN-MJW;

f)   *Angermann, et al. v. General Steel Domestic Sales, et al.*, Case No. 10cv711-REB-MJW;

g)   *Fisher, et al. v. General Steel Domestic Sales, LLC, et al.*, Case No. 10cv1509-WYD-BNB;

h)   *Conner v. General Steel Domestic Sales, LLC*, Case No. 10cv2073-MSK-BNB;

i)   *Guerzon, et al. v. General Steel Domestic Sales, LLC*, et al., 11cv1461-WYD;

j)   *General Steel Domestic Sales, LLC v. Tomson's Dry Spray, Inc.*, et al., Case No. 10cv2972-CMA; and

k)   *General Steel Domestic Sales, LLC v. Rising Sun Missionary Baptist Church, Inc.*, 11cv1332-DME-CBS.

127)   General Steel and Knight never have complied with the permanent injunction in the AG's Case prohibiting them from specifically making certain misrepresentations

and from generally using deceptive business practices.  Such disregard is evidenced by the numerous lawsuits filed by customers such as those set forth in paragraph 126 above, the numerous arbitration proceedings initiated by customers against General Steel, the hundreds and perhaps thousands of complaints made by customers in the last decade, the dozens of complaints that appear on consumer websites, and the hundreds of blatant injunction violations General Steel published and continues to publish on the internet with time stamps as early as 2006 and as recent as this month, October, 2013.

128)    For example, when searching the phrase "general steel customers" using Google, postings from ripoffreport.com appear on the first page of the search results.  The first of these postings from "Michael" in Irvine, California refers to General Steel as "fraud, ripoff, shameless liars."  At least thirty (30) more negative postings follow. The first page of the Google search results for a more focused search of "general steel litigation" shows consumer websites containing numerous customer complaints and two legal websites identifying numerous lawsuits in which General Steel has been a party over the past several years.

129)    Instead of simply complying with the permanent injunction, General Steel's and Knight's primary response to the AG's Case was to blame others for their misfortunes and to become unreasonably paranoid.  General Steel's and Knight's collective delusions manifested themselves in their consistent unlawful use of litigation to discourage anyone from pursuing claims against them, to punish anyone who had pursued claims against them, and to destroy competitors and former employees who continued to work in the steel building industry.

130)   For example, in 2006, General Steel filed a lawsuit in federal court in California against, *inter alia*, numerous entities and individuals who participated in or cooperated with the Colorado Attorney General in the AG's Case, including attorneys from the offices of the Colorado Attorney General, New Mexico Attorney General, Sacramento District Attorney, the Better Business Bureau, a Denver television station, and witnesses who testified adversely to General Steel.  The case was transferred to this District, Case No. 07cv1145-DME-KMT.  General Steel's claims against the attorneys ultimately were settled in connection with the Consent Decree. With a limited exception, all of its claims against all of the other parties were dismissed in a lengthy opinion by Judge Ebel in which he described General Steel's verbose 86-page complaint as "conspicuously lacking…any factual filler."

131)   General Steel also has not hesitated to sue its customers and their attorneys who have dared to pursue claims against it for fraud and use of deceptive business practices and prevailed.  General Steel has contended in these cases that the customer and the customer's attorney violated the nondisclosure provision in the customer's contract by publicizing the customer's favorable legal result against General Steel.  In making this argument, General Steel conveniently ignored the fact that its contract was rescinded due to its fraud and, thus, that there was no contract to enforce.  In truth, the argument was a pretext to harass and intimidate customers and customers' attorneys into not publicizing findings that General Steel acted fraudulently and deceptively in its transactions with the customers although they had the legal right to do so.

## VII. GENERAL ALLEGATIONS

**A. False and Misleading Blog Articles**

132)     General Steel is the direct or indirect owner of www.thenewgeneralsteel.com,

www.generalsteelchurchbuildings.com, www.genstoneproducts.com,

www.generalsteel.net, www.generalsteel.com, www.anthemsteel.com,

www.generalsteelbuilding.com, www.generalsteelbarnbuilding.com,

www.Discountsteelbuildings.com, www.generalsteelscam.com,

www.genstoneproducts.com, www.generalsteelcorporation.com,

www.generalsteelcompany.com, www.csisteelbuildings.com,

www.anthemsteelbuildings.com, www.generalsteelindustrialbuildings.com,

www.generalsteelaircrafthanger.com (the "General Steel Websites').

133)     Capital Steel, www.csisteelbuildings.com, is a limited liability company formed

by Knight and owned by him, either directly or indirectly as a subsidiary of General

Steel.

134)     In order to promote and market the General Steel Websites, General Steel has

created or has authorized third parties to create an extensive network of blatantly false

and misleading advertisements, stories, testimonials and/or internet press releases on

a multitude of websites (the "Syndicate Websites").  Links contained in these stories

point back to one or more of the General Steel Websites.  A representative sample of

the Syndicate Websites and their destinations are attached hereto as Exhibit A.

135)     This extensive network of false and misleading advertisements on the Syndicate

Websites is used by General Steel to promote the General Steel Websites.

136)     The Syndicate Websites contain hundreds of articles containing hundreds of false

statements of fact concerning General Steel, its history and its products (the "False

Advertisements").  These blatantly false and misleading representations are posted on hundreds of websites all across the internet.

137)   For example, the False Advertisements contain statements including:

a)   General Steel and its affiliate, Capital Steel, manufacture steel buildings

b)   Anthem Steel manufactures steel buildings

c)   General Steel was founded in 1928

d)   General Steel sources its steel from Pittsburgh

e)   General Steel manufactured and produced grain silos fifty years ago

f)   General Steel manufactures and supplies steel to the United States auto industry

g)   General Steel manufactures automotive rims

h)   General Steel manufactured and supplied the allies with armor, tanks and turrets in order to fight off the Germans during World War II.

i)   General Steel provided armaments to the United States and its allies post World War II.

j)   General Steel bought a company that produces steel and plastic pipes for oil, gas and water pipelines.

k)   General Steel purchased National Roll and Foundry Company and St. Louis Car Company in the 1960's.

l)   An employee of General Steel came up with the name for the NFL football team the Pittsburgh Steelers.

m)   General Steel has a 50 year transferrable warranty.

n)   General Steel has been used to build the hull of a ship for the United States Navy

o)  The sale of steel buildings to airports accounts for 20% of General Steel's business last fiscal year.

p)  That General Steel sells Armstrong Steel Buildings.

138)   The False Advertisements all contain links to the General Steel Websites and/or General Steel's Youtube account.

139)   General Steel uses the False Advertisements in an attempt to make consumers believe that it has been in business longer than it has, that it actually manufactures the products that it sells, and that it is an upstanding company with a good reputation.

140)   More particularly, the intent of the False Advertisements is to hijack the corporate identity of General Steel Industries, Inc.,("GSI") a company established in 1928 that at one time ranked in the Fortune 500 in the 1960's, in an attempt to mask the bad reputation General Steel has created for itself.

141)   The False Advertisements are replete with representations that General Steel is not only a manufacturer of steel buildings, but also a manufacturer of numerous other specialized steel products.

142)   The False Advertisements also consist of many false consumer reports and/or testimonials.

143)   General Steel and or its agents have used private domain name registry services to conceal the actual owners/ and or providers of the Syndicate Websites in order to mislead consumers that the False Advertisements are written by unaffiliated third parties and/or customers of General Steel, when in fact the False Advertisements are written by General Steel and/or their agents.

144)  The False and misleading blog articles give consumers the false impression that General Steel manufactures the buildings it sells.

145)  The False and misleading blog articles give consumers the false impression that General Steel sells Armstrong Steel products.

### B. Advertising Utilizing Armstrong's Logo

146)  Armstrong is the owner of Federal Trademark Registration 4417890 (the "Logo Mark").

147)  The Logo Mark consists of an image of a shield made out of metal with nine (9) rivets spaced around the outer edge of the shield.  The words "ARMSTRONG STEEL" appear in the center of the shield with a stylized start graphic appearing below the literal element.

148)  The Logo Mark is inherently distinctive.

149)  The Logo Mark is used to identify Armstrong's goods to the public.

150)  On www.generalsteel.com and www.gensteel.com, General Steel makes available to the public a certain electronic advertising brochure (the "E-Brochure").  Relevant printouts of the E-Brochure are attached hereto as Exhibit B.  General Steel has reproduced a colorable imitation of the Logo Mark, utilizing the same graphical elements, but replacing the literal element ARMSTRONG with FRAUDULENT (the "Infringing Mark").

151)  In addition to the use of the Infringing Mark, General Steel has also utilized Armstrong's Logo Mark in General Steel's own advertising in blog articles published by General Steel and/or its agents in an effort to confuse Armstrong customers into

believing General Steel sells Armstrong Steel Buildings (the "Infringing Blogs").  A

representative sample of the Infringing Blogs is attached hereto as <u>Exhibit C</u>.

152)    When a User clicks on the Logo Mark contained in one of the Infringing Blogs,

the user is directed to a General Steel Website.

### C. General Steel's Use of Armstrong's Copyrighted Designs

153)    Armstrong is the owner of Federal Copyright Registration VA 1-876-871 (the

"Logo Mark").

154)    The Logo Mark contains 2 dimensional artistic images.

155)    These images are considered original works of authorship that are fixed in a

tangible medium and are protected under United States copyright laws.

156)    Armstrong owns the website located at www.armstrongsteelbuildings.com (the

"Armstrong Website").

157)    The Armstrong Website is an original work of authorship which is fixed in a

tangible medium.

158)    Armstrong owns the copyrights in and to the Logo Mark and the Armstrong

Website (the "Armstrong Copyrights").

159)    The Armstrong Copyrights covers the two dimensional artwork embodied in the

Armstrong Logo and the Armstrong website.

160)    General Steel and or its agents modified the Armstrong Copyrights to create the

Infringing Mark.

161)    General Steel and/or its agents caused the Armstrong Copyrights to be copied,

reproduced, displayed and distributed on the Infringing Blogs.

162)   Armstrong has not authorized General Steel to modify, reproduce or republish the Armstrong Copyrights.

163)   The Infringing Logo constitutes an unauthorized derivative work of the Armstrong Copyright.

164)   Armstrong has been damaged by the unauthorized publication of the illegal derivative work embodied in the Infringing Mark.

165)   Armstrong has been damaged by the unauthorized reproduction, publication and distribution of the Infringing Blogs

166)   The use of Armstrong's copyrighted designs gives consumers the false impression that General Steel sells Armstrong Steel products.

### D. Advertising on General Steel's Websites

167)   General Steel has also used the General Steel Websites to facilitate false and misleading statements to the consuming public.  The false and misleading statements include, but are not limited to, falsely stating/implying that General Steel manufactures steel buildings, that it has a history of 100% consumer satisfaction, or that it has been awarded "Best in the Industry" from 2007 to present.  A representative sample of the False Website Statements is attached hereto as Exhibit D.

168)   Among the False Website Statements are claims by General Steel that it has received the "Best in the Industry" Award every year since 2007, however the General Steel websites, provide no information regarding who granted the award, what the criteria were for granting the award, or any other indication of the factual

basis for the statement.  Upon information and belief, General Steel has not won any such award.

169)    In the AG Suit, the State called expert George King, a consultant and former executive in the steel building manufacturing industry. In the companies with which he was involved, the cancellation rate on contracts for buildings was 5 to 7%, which is dramatically different than Jeff Knight's estimate of 25% and Bruce Graham's estimate of 30 to 35%. It is difficult to understand how a company with a cancellation rate five times the industry average would be awarded "Best In The Industry" by any legitimate organization or have a 100% customer satisfaction rating with customers.

170)    False Website Statements include a list of customers that have allegedly taken delivery of General Steel Buildings including, but not limited to: 4H; The United States Air Force Academy Football Team; the American Legion; the American Veterans; Archer Daniel Midland; US Army Corps of Engineers; AI Food Systems, Inc.; Bardstown Mills, Ashland Railway; BG Group; Black & Veatch; BP Wind Energy; British Petroleum; Buffalo Bore; CalX Minerals; Caterpillar; CEMEX; Crisis Energy; Climax Milybdenum; Compass Middle School; Copper Mountain; Columbia University; Xcel Energy; the YMCA; CS Mining; CSX Corporation; the United States Department of Justice; Disney; Dow Chemicals; Driscoll's; East West Gold & Diamonds; E&H; Department of Homeland Security; FEMA; Frito Lay; the Girl Scouts of America; Glenwood Caverns Adventure Park; Globe Xplore; General Motors; Grunley; General Service Administration; the Humane Society; Hyundai; IFA Country stores; Kent State University; Lego land; Molloy College; NAPA; NASA; Newmont; Nissan; Oklahoma State University; PG&E; Phantom Fireworks;

Pima County; Ross University; Rutgers University; SAIC; The Salvation Army; Six

Flags; TCN; Tetra Tech; Wal-Mart; Granger; Wohrle's; WPX Energy and the United

States White House.  Upon information and belief the forgoing list contains at

minimum one false representation of fact.

171)    The False Website Statements give consumers the false impression that General

Steel manufactures the buildings it sells.

### E. Yahoo Paid Search Advertising

172)    General Steel and/or its agents advertise General Steel's products through the use

of on-line paid search advertisements, including but not limited to Yahoo.

173)    Upon information and belief General Steel has run and continues to run paid

search advertising with Yahoo in which it claims to be the "#1 Steel Building

Manufacturer," An example of General Steel's Yahoo advertising is attached hereto

as Exhibit E.

174)    General Steel does not manufacture steel buildings.

175)    The False Yahoo advertisements give consumers the false impression that General

Steel manufactures the buildings it sells.

176)    General Steel is prohibited from making any such representations by the

injunction issued by the Court in the AG Suit.

### F. Directory Websites

177)    Upon information and belief, General Steel and/or its agents have created

hundreds of directory listings on various advertising websites explicitly and falsely

stating that General Steel manufactures steel buildings (the "False Directory

Listings") Representative samples of the False Directory Listings are attached hereto as <u>Exhibit F</u>.

178)    Each False Directory Listing contains a link to one of the General Steel Websites.

179)    The False Directory Listings are within General Steel and/or its agent's control.

180)    The False Directory Listings give consumers the false impression that General Steel manufactures the buildings it sells.

181)    Being a manufacturer versus a reseller is a distinguishing factor in consumers' minds when comparing steel building companies, and is material to customer's purchasing decisions.

### G. Representations Made by Sales and Customer Service Representatives

182)    General Steel also has instructed its sales representatives to utilize false and misleading statements when interacting with prospective customers (the "False Sales Pitch").  The False Sales Pitch is designed to give the unwary consumer the impression that General Steel is in fact a manufacturer of steel buildings.  An example of one such exchange is attached hereto as <u>Exhibit G</u>.

### VIII. DAMAGES

183)    Due to General Steel's conduct as described above, Armstrong and Mr. Chumley have been harmed by General Steel's false, misleading and illicit behavior, including but not limited to the false representations that General Steel sells Armstrong Steel buildings.

184)    General Steel has maliciously and deceptively campaigned against Armstrong and Mr. Chumley causing Armstrong and Mr. Chumley harm and the loss of business.

185)   General Steel has purposely made false and fraudulent representation concerning their products in their advertising in order to induce unsuspecting customers to enter into contractual relationships with General Steel.

186)   General Steel has made grossly false and misleading statements in its advertising literature, which has damaged Armstrong.

187)   By utilizing false and misleading statements about its company, history, products and competitors in it's advertising, General Steel has made sales it would not have otherwise made.

188)   As a direct and proximate result of the pattern of malicious and false comments in General Steel's commercial advertising, Armstrong has sustained and continues to sustain damages in an amount to be proven at trial, and immediate and irreparable injury to Armstrong's and Mr. Chumley's reputation and goodwill. At this time, Armstrong and Mr. Chumley are unable to calculate the lost profits and lost goodwill attributable to General Steel's wrongful conduct. Accordingly, there is no adequate remedy available at law to Armstrong and Mr. Chumley.

## IX. CLAIMS FOR RELIEF

### COUNT I

### Copyright Infringement - 17 U.S.C. §501 et seq.

189)   Defendants incorporate by reference all preceding paragraphs in this Answer and Counterclaim.

190)   Armstrong is the owner of the Armstrong Copyrights, including Copyright registration VA 1-876-871.

191)   In creating the Infringing Logo and the Infringing Blogs, General Steel has
created unlawful derivative works of the 2 dimensional graphic artwork evidenced in
the Armstrong Copyrights in violation of 17 U.S.C. § 106(2).

192)   By publishing the Infringing Logo in its E-Brochure and the Armstrong Logo and
copies of the Armstrong Website on the Infringing Blogs, General steel has violated
Armstrong's exclusive right to control the reproduction and distribution of the
Armstrong Copyrights under 17 U.S.C. §§ 106(1); 106(3) .

193)   General Steel's infringement of the Armstrong Copyrights was willful with intent
to profit.

194)   As a direct and proximate result of such acts and conduct, Defendants have
sustained damages and are entitled to an award of damages under 17 U.S.C. § 504
including an award of General Steel's profits, and statutory damages. Said amounts
will be proven at trial.

## COUNT II

### False Advertising- 15 U.S.C. § 1125(a)(1)(B)

195)   Defendants incorporate by reference all preceding paragraphs in this Answer and
Counterclaim.

196)   General Steel in the False Website Statements, False Advertisements, False
Directory Listings, and False Sales Pitch has made false representations about itself,
its history and its products.

197)   General Steel has made false and misleading statements in the False
Advertisements including:

a)   General Steel and its affiliate, Capital Steel, manufacture steel buildings;

b) Anthem Steel manufactures steel buildings;

c) General Steel was founded in 1928;

d) General Steel sources its steel from Pittsburgh;

e) General Steel manufactured and produced grain silos fifty years ago;

f) General Steel manufactures and supplies steel to the United States auto industry;

g) General Steel manufactures automotive rims;

h) General Steel manufactured and supplied the allies with armor, tanks and turrets in order to fight off the Germans during World War II;

i) General Steel provided armaments to the United States and its allies post World War II;

j) General Steel bought a company that produces steel and plastic pipes for oil, gas and water pipelines;

k) General Steel purchased National Roll and Foundry Company and St. Louis Car Company in the 1960's;

l) An employee of General Steel came up with the name for the NFL football team the Pittsburgh Steelers;

m) General Steel has a 50 year transferrable warranty;

n) General Steel has been used to build the hull of a ship for the United States Navy;

o) The sale of steel buildings to airports accounts for 20% of General Steel's business last fiscal year;

p) General Steel sells Armstrong Steel Buildings.

198)   By illegally displaying advertisements stolen from Armstrong Steel's copyrighted website that read "Buy an Armstrong Steel Building! CLICK HERE FOR MORE

INFORMATION!" on the Infringing Blogs and deceptively redirecting customers who click the Armstrong advertisements to the General Steel websites, General Steel is falsely advertising that it sells Armstrong Steel Buildings.

199)   These blatantly false representations have been used in interstate commerce in connection with General Steel's commercial advertising and promotion of its goods and services.

200)   The false and misleading representations are material and are likely to influence customer's purchasing decisions.

201)   The false and misleading representations actually deceive or have the tendency to deceive a substantial segment of the audience.

202)   Armstrong has been or is likely to be damaged as a result of General Steel's actions.

203)   General Steel has benefited by these false representations by obtaining sales and business that it would not have otherwise obtained.

204)   Based on the conduct described above and the injury caused by General Steel, Armstrong and Mr. Chumley is entitled to have an award of monetary damages, disgorgement of General Steel's profits, costs and attorney's fees.  Said amounts will be proven at trial.

**PRAYER FOR RELIEF**

205)   WHEREFORE, for all the reasons stated above, Armstrong respectfully requests that the Court enter an Order:

a)   Awarding damages in an amount to be proved at trial;

b) Permanently enjoining the Counter-Defendants from making any claims that it is a manufacturer of steel buildings and the other false representations contained in the Second Claim for Relief;

c) Awarding, after first obtaining leave of the court, punitive, and/or exemplary damages against Counter-Defendants;

d) Awarding a disgorgement of Counter-Defendant's profits.

e) Awarding attorney's fees, cost and interest;

f) Awarding such other relief as this Court deems just under the circumstances.

Respectfully submitted this 27th day of November, 2013

_s/ Peter C. Lemire_
Peter C. Lemire
Leyendecker & Lemire, LLC
5460 S Quebec St, Suite 330
Greenwood Village, CO 80111
Telephone: 303.768.0123
Fax: 303.672.9200
Email: Peter@coloradoiplaw.com

Paul M. Grant
Grant Kuhn LLC
143 Union Boulevard, Suite 550
Lakewood, CO 80228
Telephone:  720.545.0883
Email:  pgrant@grantkuhnllc.com

**ATTORNEYS FOR
DEFENDANT CHUMLEY, _et al_.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2013, I caused the foregoing document, titled AMENDED ANSWER TO PLAINTIFF'S COMPLAINT AND JURY DEMAND AND DEFENDANTS' COUNTERCLAIMS, to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address:

David S. Fein
Patrick Frye
Building Services Group
Corporate Legal Department
8321 South Sangre De Cristo
#300
Littleton, CO 80127
720.981.6091
720.963.4995 (fax)
david.fein@embsgroup.com
Patrick.F@embsgroup.com

Henry L. Solano,
Suzanne M. Meintzer,
Wilson Elser Moskowitz Edelman & Dicker, LLP
1512 Larimer Street, Suite 550
Denver, CO 80202
(303) 572-5300
(303) 573-5301 (fax)
Henry.Solano@wilsonelser.com
Suzanne.Meintzer@wilsonelser.com

I further certify I have mailed a true and correct copy of the forgoing document to

Gottfried Swartholm a/k/a Gottfrid Svartholm a/k/a Gottfried Swartholm Warg and PRQ INTERNET KOMMANDITBOLAG. A Swedish Limited Partnership, d/b/a PRQ Inet KB
c/o Mariefred Prison
Box 105
647 23 Marifred
Sweden

Dated: November 27, 2013.

Respectfully submitted,

*s/ Peter C. Lemire*
Peter C. Lemire

37

Leyendecker & Lemire, LLC
5460 S Quebec St, Suite 330
Greenwood Village, CO 80111
Telephone: 303.768.0123
Fax: 303.672.9200
Email: Peter@coloradoiplaw.com