IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–00769–MSK–KMT

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a GENERAL STEEL CORPORATION, a
Colorado limited liability company,

      Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually,
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as
ARMSTRONG STEEL CORPORATION,
PRQ INTERNET KOMMANDITBOLAG (LIMITED PARTNERSHIP) doing business as PRQ
INET KB, and
GOTTFRID SWARTHOLM, individually,

      Defendants.

v.

JEFFERY KNIGHT,

      Third-Party Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "General Steel's Motion to Dismiss" [Doc. No. 147,

filed January 6, 2014] ("Mot.") and "General Steel's Memorandum of Law in Support of its

Motion to Dismiss" ("GSBr.") filed contemporaneously.   [Doc. No. 148.]   Atlantic Building

Systems, LLC a/d/a/ Armstrong Steel Corporation ("Armstrong") filed its "Third Party Plaintiff's Response to Third Party Defendants' Motion to Dismiss" [Doc. No. 164] ("Resp."), along with its Brief in Opposition [Doc. No. 165] ("Resp.Br.") on January 30, 2014.   On February 13, 2014, "General Steel's Memorandum of Law in Reply to Armstrong's Brief in Opposition and in Further Support of General Steel's Motion to Dismiss" was filed [Doc. No. 176] ("Reply").

General Steel attacks Count II of the Amended Counterclaims filed by Armstrong (*see* Amended Counterclaims ("Am.CC") [Doc. No. 117]) pursuant to Fed. R. Civ. P. 12(b)(6) alleging insufficient facts to state a claim.   Count II alleges a cause of action for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B), the Lanham Act.   (*Id.* ¶¶ 195 – 204.)   Armstrong alleges General Steel made false and misleading statements about itself, its history, and its products on certain third-party websites by virtue of misleading advertisements, stories, testimonials and/or internet press releases which connect to General Steel owned or operated websites through links in the text. (*Id.* ¶¶ 196, 199.) Examples of third-party websites General Steel purportedly created or authorized to propagate the alleged false advertising are attached as Exhibits A, C, and D to Armstrong's Counterclaim.   Such statements purportedly damage Armstrong as it is alleged to also be in the business of selling pre-engineered steel buildings and presumably suffers by comparison.   (*Id.* ¶¶ 113, 202).

Additionally, Armstrong alleges that General Steel made similar false and misleading statements to the consuming public on its openly owned websites (*id.* ¶¶ 167 – 170), and also violated 15 U.S.C. § 1125(a)(1)(B) by running paid advertisements on Yahoo.com, as well as creating directory listings on third-party websites, which mislead the public into believing General

Steel is a steel building manufacturer, among other false claims.   (*Id.* ¶¶ 173, 177 and Exs. E and F.)

Armstrong's Third-Party Claim against Jeffrey Knight, General Steel's owner and CEO, is predicated upon the assertion that Knight "formulates, controls, directs, supervises, perpetuates, manages and has knowledge of and acquiesces in the practices and policies of General Steel to such a degree as to make him personally liable" for Armstrong's Counterclaims.   (*Id.* ¶ 109). Armstrong also alleges that Knight "knew or should have known of marketing and advertising practices used by employees or agents working on his and General Steel's behalf." (Counterclaim, ¶ 109).

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted; . . . ."   Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is <u>not to weigh potential evidence</u> that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (emphasis added; citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."   *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' "   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   The *Iqbal* evaluation requires two prongs of analysis.   First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.   *Id*. at 1949–51.   Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 1951.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 129 S. Ct. at 1940.   Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "   *Id*. at 1949 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."   *Iqbal*,129 S. Ct. at 1949 (citation omitted).

4

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."); *Kennedy v. Peele*, ____ F. App'x ____, Case No. 11-cv-00967-REB-KMT, 2014 WL 92251, at *4 (10th Cir. January 10, 2014).  "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

### *ANALYSIS*

### A.    *Failure to State a Claim for False Advertising Against General Steel*

In order to succeed on a false advertising claim under the Lanham Act, Armstrong must plead facts which, if true, demonstrate: (1) that General Steel made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) origin, association or approval of the product with or by another; or (b) the characteristics of the goods or services; and (4) that injure Armstrong.  *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002); *see also L-3 Commums. Corp. v. Jaxon En'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1082 (D. Colo. 2012) (J. Krieger).

The court, in culling out the well-pleaded facts contained in the Amended Counterclaim,[1] finds as follows:

Armstrong has alleged that (1) General Steel has been operating since 1995; (2) General Steel is a broker of steel buildings and does not staff engineers, detailers or draftsmen; and (3) General Steel does not manufacture or fabricate steel buildings, or other steel products. (Am.CC at ¶ 118)   Armstrong alleges that General Steel is the direct or indirect owner of www.thenewgeneralsteel.com, www.generalsteelchurchbuildings.com, ww.genstoneproducts.com, www.generalsteel.net, www.generalsteel.com, www.anthemsteel.com, www.generalsteelbuilding.com, www.generalsteelbarnbuilding.com, www.Discountsteelbuildings.com, www.generalsteelscam.com, www.genstoneproducts.com, www.generalsteelcorporation.com, www.generalsteelcompany.com, www.csisteelbuildings.com, www.anthemsteelbuildings.com, www.generalsteelindustrialbuildings.com, www.generalsteelaircrafthanger.com (Am.CC ¶ 132), and that Capital Steel is a limited liability company formed and owned by Knight, either directly or indirectly as a subsidiary of General Steel (Am.CC ¶ 133.)   It is alleged that Capital Steel owns the website www.csisteelbuildings.com.   (*Id.*)

Armstrong alleges that all of the following statements about General Steel are false: (1) General Steel is a manufacturer of steel buildings; (2) General Steel has been in business since 1928; (3) General Steel provides "quality steel" to auto manufacturers; (4) General Steel produces automotive rims; (5) General Steel supplied the allies in World War II with armor, tanks and

---

[1]   In the interests of brevity, the court has not undertaken an exhaustive list of the facts alleged, but only those necessary to address the legal issues herein.

turrets in order to fight off the Germans.; (6) the NFL's Pittsburgh Steelers were named by a General Steel employee; (7) General Steel was used in the World Trade Center towers; (8) General Steel has 30,000 satisfied customers; and (9) General Steel was the leading steel company in the United States in the 1950s and 1960s.   (Am.CC ¶ 102.)   Armstrong also alleges that certain other representations about General Steel or companies affiliated with General Steel are false including: 1) General Steel and its affiliate, Capital Steel, manufacture steel buildings; (2) Anthem Steel manufactures steel buildings; (3) General Steel sources its steel from Pittsburgh; (4) General Steel manufactured and produced grain silos fifty years ago; (5) General Steel manufactures and supplies steel to the United States auto industry; (6) General Steel provided armaments to the United States and its allies post World War II; (7) General Steel bought a company that produces steel and plastic pipes for oil, gas and water pipelines; (8) General Steel purchased National Roll and Foundry Company and St. Louis Car Company in the 1960's; (9) General Steel has a 50 year transferrable warranty; (10) General Steel has been used to build the hull of a ship for the United States Navy; (11) the sale of steel buildings to airports accounts for 20% of General Steel's business last fiscal year; and (12) General Steel sells Armstrong Steel Buildings.   (Am.CC ¶ 197; 137.)

Armstrong alleges that on General Steel's openly owned and controlled websites listed in paragraphs 132 and 133 of the Amended Counterclaims, General Steel has made the following untrue statements: General Steel manufactures steel buildings, General Steel has a history of 100% consumer satisfaction, and General Steel has been awarded "Best in the Industry" from 2007 to present.   (Am.CC ¶ 167.)   Further, Armstrong alleges that on www.generalsteel.com and

www.gensteel.com, in connection with advertisements promoting its own products, General Steel makes available to the public a certain electronic advertising brochure within which General Steel has reproduced a colorable imitation of the Armstrong's Mark, utilizing the same graphical elements, but replacing the literal element ARMSTRONG with FRAUDULENT. [2]  (Am.CC ¶ 150.)

Armstrong alleges that, "[b]eing a manufacturer versus a reseller [of steel buildings] is a distinguishing factor in consumers' minds when comparing steel building companies, and is material to customer's purchasing decisions."  (Am.CC ¶ 181.)   This statement is arguably an unsupported conclusion rather than a factual allegation and therefore is not entitled to the presumption of truth.   Nevertheless, in context the statement simply rounds out one of Armstrong's theories which alleges that "by utilizing false and misleading statements about its company, history, products and competitors in its advertising, General Steel has made sales it would not have otherwise made."  (Am.CC ¶ 187.)   As noted, Armstrong alleges that General Steel advertises itself to be a manufacturer of steel buildings.   (Am.CC ¶ 102.)   Given that Armstrong is a competitor of General Steel in the sales of pre-manufactured steel buildings, Armstrong alleges it has been damaged as a result of General Steel's use of false and misleading statements.   (Am.CC ¶ 101.)

Armstrong also alleges that "General Steel has created or has authorized third parties to create an extensive network of . . . websites" on which it posts many of the false and misleading

---

[2]   The Motion to Dismiss does not challenge Count I of the Amended Counterclaims concerning copyright violations; this alleged fact is considered by the court to the extent it bears on only the false advertising claims.

statements identified by Armstrong (and set forth specifically herein) in the form of advertisements, stories, testimonials and/or internet press releases.   (*Id.* ¶ 134)   Armstrong submits exhibits to the counterclaims which purportedly support that the false statements are contained in certain internet postings and it claims that, "[l]inks contained in these stories point back to one or more of the General Steel Websites."   (*Id.*; Ex. A, C, D.)   The court has reviewed Exhibits A, C and D to the Amended Counterclaims and notes numerous instances where the writing appears to be an independent review or observation by a disinterested person about General Steel.[3]   Armstrong alleges that although the so-called blogs or stories appear to be written by independent sources, the material is actually written by General Steel and/or their agents.  (Am.CC ¶ 143.)   Armstrong states that General Steel and or its agents have used private domain name registry services to conceal the actual owners and/or contributors to the surreptitious websites.  (*Id.*)   Armstrong states that all the surreptitious websites have links which lead a reader directly to the General Steel websites or to General Steel's YouTube account.   (Am.CC ¶ 138.)

Armstrong further alleges that General Steel displays what appears to be legitimate Armstrong Steel advertisements on the surreptitious websites but which actually contain links to General Steel.   Those writings, too, have been reviewed by the court as contained in Exhibits C and D to the Amended Complaint and noted that within the small print under the photo advertisement, the reference is to "(http://www.generalsteelbuilding.com/)."   (*Id.*; Am.CC ¶ 198.)

---

[3] General Steel itself maintains that many of the documents contained in the exhibits which Armstrong alleges contain false statements "are actually blog posts created by semi-anonymous third parties."   (GSBr. at 6.)

In other words, it is alleged and indeed appears from the hard copy of the internet posting that when a viewer of the fake Armstrong Steel advertising follows the directive to "Click Here for More Information", the viewer would be taken to http://www.generalsteelbuilding.com instead of to an Armstrong website.   Armstrong claims that "By illegally displaying advertisements stolen from Armstrong Steel's copyrighted website that read 'Buy an Armstrong Steel Building! CLICK HERE FOR MORE INFORMATION!' on the surreptitious websites which deceptively redirect customers to the General Steel websites, General Steel is falsely advertising that it sells Armstrong Steel Buildings."   *Id.*

By and large, General Steel's arguments in favor of its Motion to Dismiss Counterclaim II confuse the requirement that a party state sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face with Rule 11's requirement that claims be sufficiently investigated before filing to ensure, among other things, that the factual allegations in the claims have evidentiary support.   *See* Fed. R. Civ. P. 11(b)-(c); *United States, ex rel. Superior Steel Connectors Corp. v. RK Specialties Inc.*, 2011 WL 5176157, at *6 (D. Colo. 2011).

Rule 11 requires a "party's attorney to conduct a prefiling investigation of the legal and factual basis for his claims."   *Mendoza v. Valley Park Apartments, Inc*., Case No. 13-cv-00002-PAB-KMT, 2014 WL 984687, at *2 (D. Colo. March 13, 2014) (quoting *Davis v. Hudgins,* 896 F. Supp. 561, 573 (E.D. Va. 1995).   "For a complaint to be reasonable, the factual investigation must have uncovered some information to support the allegations in the complaint." *Id.*   "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b)

10

has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

The standard for proving a Rule 11 violation, however, is far more stringent than the generous provisions of Rule 12(b)(6) wherein the court is required to accept factual allegations as true and which contains no requirement of evidentiary support for the factual allegations set forth in the Complaint.   The court finds that the facts set forth in Armstrong Steel's Counterclaims, accepted as true, are sufficient to establish a plausible claim that (1) that General Steel made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) origin, association or approval of the product with or by another; or (b) the characteristics of the goods or services; and (4) that injured Armstrong.   Whether the claim survives the rigors of discovery and trial, as well as a possible Rule 11 violation motion, is a question for another day.   Therefore, this court recommends that the Motion to Dismiss be denied as to General Steel.

### B.      Failure to State a Claim against Jeffrey Knight.

General Steel also alleges that the Amended Counterclaims are

> devoid of any allegations that Knight individually participated in the alleged False Advertising and Copyright Infringement. Indeed, conspicuously absent from the False Advertising counterclaim is Knight's involvement or participation in the Syndicate Websites, Infringing Blogs, by either reviewing or drafting the alleged false statements.

(Mot.Br. at 32.)   Armstrong alleges that all copyright violations and false advertising was undertaken by General Steel at the express direction of Mr. Knight.   (Am.CC ¶ 101.)

11

Armstrong alleges that Mr. Knight "formulates, controls, directs, supervises, perpetuates, manages" all the activities of General Steel including its advertising practices and policies. (Am.CC ¶ 109).   There are, however, no specific instances alleged in the Amended Counterclaims where Mr. Knight was expressly claimed to have taken a specific action with respect to any particular alleged false statement, misrepresentation or false advertisement. Nor are there any allegations against Mr. Knight involving his personal participation in any manner in copyright violations.   The claims against him, therefore, are wholly derivative from his position as owner and CEO of General Steel.

In general, a CEO cannot be held liable based solely on his status with a corporation. *See, e.g., Tulsa Litho Co. v. Tile and Decorative Surfaces Magazine Publ'g, Inc.*, 69 F.3d 1041, 1043 (10th Cir.1995) (individual defendant's "interest in the defendant companies as their President does not make him personally liable."); *Ball v. Dillard*, Case No. 2:99CV933C, 2000 WL 33710848, at *1 -2 (D. Utah May 26, 2000)

> It is the general rule that if an officer or agent of a corporation directs or participates actively **in the commission** of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or active participation or cooperation in, **a positively wrongful act** of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

*Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-409 (10th Cir. 1958)(emphasis added);

*Zimmerman v. First Federal Sav. & Loan Ass'n,* 848 F.2d 1047, 1052 (10th Cir. 1988)(corporate directors are not liable to third parties unless the directors are alleged to have committed individual

acts upon which the third parties base their claims).   The relevant question is whether, in Mr.

Knight's capacity as a corporate officer, he specifically directed, sanctioned, or participated in "a

positively wrongful act of commission or omission which operate[d] to the injury or prejudice of

the complaining party." *Zimmerman*, 848 F.2d at 1052; *Wellborn v. Cobray Firearms, Inc.*, 139

F.3d 913, 1998 WL 80236, at *3 (10th Cir. Feb. 25, 1998). *See also Q.E.R., Inc. v. Hickerson*, 880

F.2d 1178, 1182-1183 (10th Cir. 1989)(Colorado has recognized the general rule that corporate

officers and directors may be held personally liable for tortious acts of the corporation in which

they *actively participated*).   See also *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1038 (D.

Colo. 2012) (J. Tafoya)(tort claims against CEO dismissed because lack of alleged personal

participation).

    As noted, the Amended Counterclaims fail to charge in specific terms any individual acts

or purposeful omissions on the part of Jeffrey Knight which constitute affirmative direction,

sanction, participation, or cooperation in the specifically alleged false advertisements which

caused Armstrong injury.   There is no allegation he drafted any advertisements, blogs, letters or

other documents, nor that he himself substituted the word Fraudulent in place of Armstrong on

specific advertisements.   There is not even any allegation that Mr. Knight contacted any of the

advertising website managers or worked personally on any advertising campaign within the

company or with outside advertising agencies.   Armstrong's sweeping allegations that Knight, as

CEO of General Steel, "formulates, controls, directs, supervises, perpetuates, manages" all the

activities of the company (Am.CC ¶ 109) is simply "a formulaic recitation of the elements of a

cause" which is devoid of weight under *Iqbal* given the lack of "further factual enhancement."

13

*Iqbal*, 129 S. Ct. at 1949.   Here Armstrong has not alleged anything more than a bare bones conclusion without any factual support that Mr. Knight actively participated in or personally directed or actively supervised or approved of or sanctioned the activity giving rise to Armstrong's claims.

Thus, Armstrong has failed to state a claim against Counterclaim Defendant Jeffrey Knight that he should be held personally liable for alleged activities of General Steel and therefore this court recommends that the claims be dismissed against him.

WHEREFORE, for the foregoing reasons, I respectfully

**RECOMMEND** that

"General Steel's Motion to Dismiss" [Doc. No. 147] be **GRANTED in part** and **DENIED in part.**   I recommend the court GRANT the motion and DISMISS all claims against Jeffrey Knight and that the court DENY the Motion in all other aspects.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).   A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street,*

*Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.   *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");   *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);   *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 21st day of April, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge