IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–00769–MSK–KMT

GENERAL STEEL DOMESTIC SALES, LLC, d/b/a GENERAL STEEL CORPORATION, a Colorado limited liability company,

    Plaintiff,

v.

ETHAN DANIEL CHUMLEY, individually,
ATLANTIC BUILDING SYSTEMS, LLC, a Delaware corporation, doing business as ARMSTRONG STEEL CORPORATION,
PRQ INTERNET KOMMANDITBOLAG (LIMITED PARTNERSHIP) doing business as PRQ INET KB, and
GOTTFRID SWARTHOLM, individually,

    Defendants.

## ORDER

This matter is before the court on "Armstrong Steel's Second Motion for Contempt and Sanctions Against Denver SEO, LLC Due to Its Destruction of Evidence and Failure to Provide Information and Documents as Ordered by this Court" [Doc. No. 499] (hereinafter "Sanction Motion"). Non-party Denver SEO filed a response on April 23, 2015 [Doc. No. 523] ("Resp.") and Armstrong Steel filed a reply on May 11, 2015 [Doc. No. 511].

Denver SEO, LLC is a non-party to the above-captioned matter and has been a participant in the discovery process as a result of its former role as Plaintiff General Steel's digital marketing firm. In that role Denver SEO admits it performed search engine optimization ("SEO"),

pay-per-click and other web support advertising services for General Steel. (Resp. at 4.) General Steel terminated Denver SEO on January 23, 2015. *Id*.

The primary issue giving rise to this motion for sanctions between Denver SEO and Armstrong Steel concerns an advertisement which, as discovery has revealed, was placed by Denver SEO and which claims that Plaintiff General Steel is a steel building manufacturer (hereinafter the "manufacturing ad"). That claim is false. The incendiary part of this dispute began when Denver SEO originally denied any involvement with creating or placing the manufacturing ad and voiced suspicion that Ethan Chumley, the principal of Armstrong Steel, had fabricated the advertisement to inculpate General Steel. This allegation has proven to be unfounded. Mr. Olsen, the principal at Denver SEO, actually discovered himself while reviewing the account activity, that his company had, indeed, created and published the manufacturing ad. The situation was further complicated because upon discovery that the manufacturing ad was still active, Mr. Olsen immediately removed it from any platforms to which he had access -- allegedly a "knee-jerk" reaction to seeing information that was improper and which he had denied creating, out on the internet and placed there by his company.[1]

In reaction to the unfounded allegations and the later proof and admission that Denver SEO had actually placed the manufacturing ad, the court required Denver SEO to undertake a rigorous investigation to ascertain, among other relevant information, who created the ad, when it was created, who approved the ad for distribution, when that was accomplished, where the ad was

---

[1] Fortunately, Mr. Olsen's deactivation of the Microsoft ads did not permanently remove the information from the history of the account. (Resp. at 5.) Denver SEO maintains that no data was lost. (*Id*. at 6.)

placed and all platforms on which the ad appeared. (Transcript of January 14, 2015 Hearing [Doc. No. 485] at 56.)

Federal courts possess the inherent power to sanction conduct that abuses the judicial process. *Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 765–766 (10th Cir.1997) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–46 (1991)). To prevail in a civil contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the party against whom contempt is sought has knowledge of the order, and that the party disobeyed the order. *Reliance Ins. Co. v. Mast Construction Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998). Those requirements are not met in this case. .

When non-parties are responding to discovery requests, courts consider the burden on the non-parties and apply, among others, the following factors in ruling on adversarial motions: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. *Echostar Communications Corp. v. News Corp. Ltd.,* 180 F.R.D. 391, 396 (D. Colo. 1998). *See Cytodyne Tech., Inc. v. Biogenic Tech ., Inc.,* 216 F.R.D. 533, 535 (M.D. Fla. 2003), citing *Farnsworth v. Proctor & Gamble Co.,* 758 F.2d 1545 (11th Cir. 1985); *erinMedia, LLC v. Nielsen Media Research, Inc.,* Case No. 8:05-CV-1123-T-24EAJ, 2007 WL 1970860, at *1–2 (M.D. Fla. 2007).

Discovery from third-parties must, under most circumstances, be closely regulated. *Echostar*, 180 F.R.D. at 396; *In re Application of Michael Wilson & Partners,* Case No. 06–cv–02575–MSK–KMT, 2009 WL 1193874, *3 (D. Colo. April 30, 2009). The court has considerable discretion in the regulation of the discovery which is exchanged in a lawsuit, and the

rules provide that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . ." Fed. R. Civ. P. 26(c).

In their Response, Denver SEO outlines the steps it took to comply with the court's January Order for the investigation. (Resp. at ¶¶ 6-10 and p. 7.) The information and documentation discovered has been conveyed to Armstrong Steel. Mr. Olsen has been the subject of several depositions and hours of testimony in response to Armstrong Steel's questioning. The court is convinced that Denver SEO has provided all the information it can in its current posture, having lost its client in the process. While the answers to the who, what, where and when concerning the creation of the manufacturing ad are still murky, Armstrong Steel now has evidence that the ad was created and published by Denver SEO while they were working on behalf of General Steel and that there was a denial of this fact in the first instance at a time when the ad was active. Armstrong Steel also has obtained volumes of information about Denver SEO's business and how General Steel was optimizing its presence on the internet. The questions that are left unanswered about the creation of the manufacturing ad simply are irrelevant. Denver SEO is not on trial in this case, and the evidence in Armstrong Steel's current possession is ample for impeachment, should such be required.

Denver SEO has spent hundreds of hours attempting to comply with Armstrong Steel's subpoena requests and the court finds it has now fully complied with the January 14, 2015 Order to the best of its ability. Unfortunately, Denver SEO brought this expense upon themselves by not finding and admitting to the creation of the manufacturing ad in the first instance and by leveling accusations against Mr. Chumley. However, enough is enough.

It is **ORDERED**

1. "Armstrong Steel's Second Motion for Contempt and Sanctions Against Denver SEO, LLC Due to Its Destruction of Evidence and Failure to Provide Information and Documents as Ordered by this Court" [Doc. No. 499] is **DENIED;** and

2. Denver SEO's request for attorney's fees and costs in responding to the Sanctions Motion is **DENIED**.

Dated this 1st day of June, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge